## A06A0240. WILLIAMS v. THE STATE.
### (627 SE2d 897)

JOHNSON, Presiding Judge.

A jury found Willie James Williams guilty of two counts of aggravated assault on a peace officer and one count of making a terroristic threat or act. Williams appeals, alleging the evidence was insufficient to support the verdict and the trial court erred in denying the motion to suppress his custodial statement. We find no error and affirm Williams' convictions.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence shows that in the late evening of May 27, 2002, a 911 hang-up call came into the Houston County 911 Center from a residence on Winchester Circle in Perry. The dispatcher directed an officer from the Perry Police Department to investigate. When the officer arrived, he spoke with Williams and decided that there was no problem. The officer returned to his routine patrol.

Shortly thereafter, a new 911 call regarding terroristic threats was made from another home on Winchester Circle. The officer responded and spoke with the family. Information led the officer back to Williams' residence. Officer Johnson and Officer Clark knocked on the door and requested Williams to step outside. Williams left the officers at the door and climbed the stairs to the upper level of his house. The officers followed Williams up the stairs and into a room where they observed Williams sitting in a chair with his back to them. Officer Clark stood behind Officer Johnson. Williams became agitated when the officers attempted to ask him some questions. He rose out of his chair, knife in hand, and went to grab another object from the couch. When Williams turned, the officers noted that he had two knives, one in each hand. Williams brandished the knives at the officers and moved in their direction. The officers drew their guns, retreated slowly down the stairs and left the home, joining Officer

---

[1] *Mills v. State*, 273 Ga. App. 699, 700 (1) (615 SE2d 824) (2005).

[2] *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[3] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

Brainard outside the home. Williams followed the officers outside with the knives. Throughout the ordeal, the officers continually instructed Williams to drop his knives.

The officers released short bursts of pepper spray into Williams' facial area. Williams then returned to his home and slammed the door closed. Officer Johnson and Officer Brainard kicked the door open, then Williams slammed the door shut. Finally, Williams headed back up the stairs. The officers kicked the door open and followed Williams. Officer Clark followed behind the other officers. The officers continued to yell for Williams to put down the knives. Officer Brainard kicked open an interior door, and Williams jabbed his knife out past the doorjamb toward Officer Brainard. Williams yelled at Officer Johnson to have Officer Brainard retreat or Williams was going to stab Officer Brainard. Williams raised the knife, and Officer Johnson believed Williams was going to throw the knife at him or charge him. At this point Officer Johnson fired one round through Williams' hand, disarming him. Officer Johnson and Officer Brainard then subdued Williams and administered first aid to him.

The jury found Williams guilty of aggravated assault against Officer Johnson and Officer Brainard and guilty of making a terroristic threat or act against Officer Clark. Williams contends the evidence was insufficient to support the jury's verdict. We disagree.

A person commits the offense of aggravated assault when he assaults with a deadly weapon or with any object, device, or instrument which when used offensively against a person is likely to or actually does result in serious bodily injury.[4] A person commits the offense of making a terroristic threat or act when he threatens to commit any act of violence.[5] Here, it is obvious from the jury's verdict that it found Williams guilty of aggravated assault against Officer Johnson and Officer Brainard because Williams, while holding knives, actually made stabbing or throwing motions toward these two officers. However, since Williams never made any threatening motions specifically directed at Officer Clark, the jury elected to find Williams guilty of the lesser included charge of making a terroristic threat or act against Officer Clark. The evidence supports the jury's decision.[6]

---

[4] OCGA § 16-5-21 (a) (2).

[5] OCGA § 16-11-37 (a).

[6] See *Sims v. State*, 269 Ga. App. 606, 607 (1) (604 SE2d 663) (2004) (threat of violence against an officer constitutes a terroristic threat); *Carter v. State*, 248 Ga. App. 139, 139-140 (1) (546 SE2d 5) (2001) (reasonable apprehension of injury sufficient to support conviction for aggravated assault); *Chastain v. State*, 163 Ga. App. 678, 679-680 (3) (296 SE2d 69) (1982) (pulling a knife on an officer sufficient to support conviction for aggravated assault on a police officer).

"It is the jury's prerogative to choose what evidence to believe and what to reject."[7]

Contrary to Williams' contention, the verdict is not inconsistent. Moreover, even if the verdict was inconsistent, our Supreme Court abolished the rule against inconsistent verdicts.[8] Appellate courts cannot know and should not speculate why a jury reached a particular verdict. The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity, but, as a matter of prudence, the conviction should be upheld as long as there is evidence to support it.[9] Here, the evidence was sufficient for a rational trier of fact to find Williams guilty beyond a reasonable doubt of two counts of aggravated assault on a peace officer and one count of making a terroristic threat or act.

2. Williams contends the trial court erred in denying the motion to suppress his custodial statement. We find no error.

The record shows that the Georgia Bureau of Investigation ("GBI") reviewed the shooting. As part of the investigation, a GBI agent interviewed Williams after he was released from the hospital. The interview lasted less than one hour and took place in the Perry Police Department's interview room. Before the interview began, Williams was both read and shown his rights, and he voluntarily signed a waiver of his rights. When questioned regarding whether he understood his rights, Williams replied in the affirmative. The GBI agent testified that he did not make any promises or threats to induce Williams' statement. The agent further testified that he did not perceive any signs in Williams' demeanor that caused him concern about Williams' understanding of the nature and significance of his actions.

Following a *Jackson-Denno*[10] hearing, the trial court determined that, under the totality of the circumstances, Williams' statement was freely and voluntarily given. Factual and credibility determinations made by a trial judge after a suppression hearing must be accepted by the appellate court unless such determinations are clearly erroneous.[11] We find no error in the trial court's determination in the present case.

Williams argues on appeal that he was under the influence of pain medication and therefore could not make a knowing and intelligent waiver of his constitutional rights. However, the trial court

---

[7] (Citation and punctuation omitted.) *Mills*, supra at 700-701.

[8] See *King v. Waters*, 278 Ga. 122, 122-123 (1) (598 SE2d 476) (2004).

[9] Id. at 123.

[10] See *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[11] See *Pinson v. State*, 207 Ga. App. 734, 735 (1) (429 SE2d 106) (1993).

found that there was no evidence or testimony that indicated that the medication affected Williams' ability to understand and give a free and voluntary statement. In fact, the only testimony relating to drug use came during cross-examination of the GBI agent, where he stated that it was probable that Williams may have been taking some pain medication on the day of the interview. Contrary to Williams' argument, the fact that an individual is under the influence of some chemical agent will not, standing alone, render the confession inadmissible.[12] The trial court was authorized to accept the GBI agent's testimony and reject Williams' testimony.[13] We cannot say that the trial court's ruling in favor of admissibility was erroneous here.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED MARCH 3, 2006.

*Jeffrey L. Grube*, for appellant.

*Kelly R. Burke, District Attorney, Katherine K. Lumsden, Assistant District Attorney*, for appellee.

---

[12] See *Shelby v. State*, 265 Ga. 118, 119 (2) (453 SE2d 21) (1995); *Richardson v. State*, 143 Ga. App. 846, 846-847 (1) (240 SE2d 217) (1977).

[13] See *Addison v. State*, 254 Ga. App. 347, 348 (1) (564 SE2d 204) (2002).