## A09A1261. PIERCE v. THE STATE.
(687 SE2d 185)

BARNES, Judge.

Michael Pierce appeals his convictions for aggravated battery, aggravated assault, terroristic threats, false imprisonment, family violence battery (three counts), simple battery (two counts), and criminal trespass. Pierce contends the trial court erred by (1) finding the evidence sufficient to sustain the convictions of aggravated battery, criminal trespass, and false imprisonment; (2) denying his motion for new trial based on ineffective assistance of counsel; (3) denying his motion to quash the indictment; (4) denying his motion to strike a juror for cause; (5) refusing to give a jury charge on lesser included offenses; (6) instructing the jury incorrectly on the crime of terroristic threats; and (7) failing to merge his conviction for battery with aggravated battery. For the reasons stated below we affirm in part, but vacate the conviction and sentence for Count 6.

On appeal from a criminal conviction, the evidence is reviewed in the light most favorable to the jury's verdict, giving deference to the jury's determination on the proper weight and credibility to be given the evidence. *Dean v. State*, 273 Ga. 806, 806-807 (1) (546 SE2d 499) (2001).

So viewed, the evidence shows that Pierce broke the chain on the door to the apartment he shared with the victim, dragged the victim from her bed, and began to strike her repeatedly with his hands, shoes, a belt, and a giraffe statue. While holding a knife to her throat, Pierce threatened to kill the victim and continued to beat her for hours as she begged him to stop. Pierce accused the victim of cheating on him with another person and told her he would stop beating her if she told him the name of that person. At times Pierce restrained the victim to prevent her from leaving and other times he physically blocked her from leaving. When Pierce stepped into the shower, the victim grabbed her keys and drove to the apartment of a friend who called the police.

The victim had bruises and "dark . . . big welts" all over her trunk and all down her legs, her face was bleeding and bruised, her lip was "busted," her ears were blackened, her hair had been ripped out in places, and she had a knife wound on her hand.

1. Pierce contends the evidence was insufficient to sustain his convictions for aggravated battery, criminal trespass, and false imprisonment. When evaluating the sufficiency of evidence, the proper standard of review is whether a rational trier of fact could have found from the evidence that the defendant was guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) Pierce was charged with aggravated battery by seriously

disfiguring the victim by repeatedly beating her thighs, resulting in scar tissue and discoloration. He argues that the discoloration of the victim's thigh did not "seriously disfigure" her, an essential element of aggravated battery. The statute provides that "[a] person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by . . . seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). The disfigurement need not be permanent, however, and whether an injury causes serious disfigurement is almost always a jury question. *Williams v. State*, 248 Ga. App. 316, 318 (1) (546 SE2d 74) (2001).

To rise to the level of "disfigurement" the injury sustained must be more than just a superficial wound. *Williams v. State*, supra, 248 Ga. App. at 319 (1). The injury suffered by the victim in this case was more than normal bruising. The belt Pierce used to hit the victim created knots deep under her skin. The severity and depth of those knots put the victim at risk for blood clots and deep vein thrombosis. To cause an injury that deep, the victim must have been hit with "very heavy and pointed blunt force." A physician's assistant testified for the State that the victim's thigh injury was not a normal bruise, caused knots under her skin, was "very deep," and was still dark blue at the time of the trial a year later. The physician's assistant further testified that superficial, normal bruising generally resolves itself within six to eight weeks. This evidence was sufficient for the jury to determine that the victim was seriously disfigured and to sustain Pierce's conviction for aggravated battery.

(b) Pierce claims the evidence did not prove the monetary amount of damages to the door, a necessary element to sustain his criminal trespass conviction.

> A person commits the offense of criminal trespass when he or she intentionally damages any property of another without consent of that other person and the damage thereto is $500.00 or less or knowingly and maliciously interferes with the possession or use of the property of another person without consent of that person.

OCGA § 16-7-21 (a).

The indictment charged Pierce with criminal trespass by intentionally damaging the front door by kicking it in, without the victim's consent, "said damage being less than $500." Although the officer did not remember seeing evidence of forced entry, the victim testified the door was chained when Pierce "busted the door down" and broke the chain. Absent evidence that the amount of damage done was more or less than $500, a conviction for criminal trespass

generally will not stand. *Cox v. State*, 243 Ga. App. 582, 583 (1) (532 SE2d 697) (2000). If the evidence shows that the damage was to everyday objects, however, an exception exists that allows the trier of fact to form its own estimates of value and damage. Id.; *Burrell v. State*, 293 Ga. App. 540, 542 (2) (667 SE2d 394) (2008). The chain lock on the door was an everyday object, and the victim's testimony authorized the jury to estimate the amount of damage done to it. Therefore, sufficient evidence existed for the jurors to determine the door was damaged and to draw on their own experiences to decide the amount of damage to the front door.

(c) Pierce argues the evidence used to prove false imprisonment had already been used to prove battery, and therefore it was not sufficient to establish false imprisonment. False imprisonment occurs when a person, "in violation of the personal liberty of another, . . . arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a).

The evidence shows Pierce grabbed the victim by the hair and dragged her from room to room in the apartment while beating her. He dragged the victim from the bedroom to the living room, to the bathroom several times, and finally took her clothes off and "threw" her in the shower. She testified she was unable to escape because Pierce was holding her, she did not give him permission to hold her, and she wanted to get away.

To sustain a conviction for false imprisonment, the State must show evidence of an arrest, confinement, or detention, and detention for a brief amount of time is sufficient. *Rehberger v. State*, 235 Ga. App. 827, 828 (1) (510 SE2d 594) (1998). It is for the jury to decide if the detention amounted to false imprisonment. Id. The victim's testimony that she was unable to leave the apartment because Pierce was holding her is enough evidence for the jury to determine the victim was detained against her will.

Pierce argues the facts the State used to prove battery are the same facts it used to establish false imprisonment, and the same facts cannot be used to establish two different crimes, citing *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008). In *Garza*, the Supreme Court of Georgia held that the State must establish a kidnapping offense with evidence that the element of asportation was more than simply incidental to another offense. Id. at 701-702. Pierce was not charged with kidnapping, which requires proof of asportation. Rather, he was charged with false imprisonment, which requires only that the State show the victim was held against her will. Throughout the victim's ordeal, she was held against her will, even when Pierce was not striking her, so that the crime of false imprisonment was proved by facts separate and distinct from those used for the battery conviction. "Under these circumstances, it cannot be said that the

(S)tate 'used up' the evidence establishing false imprisonment in proving the (other charges). Each offense was established by proof of separate and distinct facts. . . ." (Punctuation omitted.) *Butler v. State*, 194 Ga. App. 895, 898 (3) (392 SE2d 324) (1990). Therefore, this enumeration of error is without merit.

2. Pierce also contends his convictions should be reversed because his defense counsel was ineffective within the meaning of *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

> To prevail on a claim of ineffective assistance, a defendant must show that counsel rendered deficient performance and that actual prejudice resulted. Counsel are strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and counsel's performance is evaluated without reference to hindsight. A petitioner has suffered actual prejudice only where there is a reasonable probability (i.e., a probability sufficient to undermine confidence in the outcome) that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Ineffective assistance claims are mixed questions of law and fact. We accept the [trial] court's findings of fact unless clearly erroneous and independently apply the law to those facts.

(Citations and punctuation omitted.) *Head v. Hill*, 277 Ga. 255, 266 (VI) (587 SE2d 613) (2003). Further, when considering a claim of ineffectiveness, a critical distinction exists between inadequate preparation and unwise trial strategy. *Hudson v. State*, 250 Ga. 479, 486 (8) (299 SE2d 531) (1983). Especially in matters of trial tactics, a Sixth Amendment claim cannot be judged by hindsight or result. *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).

(a) Pierce alleges that his trial counsel had a conflict of interest that required her to withdraw because complaints Pierce made to the attorney and the State Bar about her effectiveness created an insurmountable conflict.

Pierce's trial counsel promptly answered Pierce's letter requesting that she withdraw as counsel with a detailed letter and a visit to the jail to discuss his issues and concerns. In addition, counsel was unaware that Pierce filed a complaint with the State Bar. The trial court held an ex parte hearing with Pierce and his counsel days before trial, which revealed only that Pierce was generally unhappy with his representation and wanted trial counsel "to do her job." He presented no evidence his trial counsel had a conflict of interest. As the trial court discussed in its order denying Pierce's motion for new

trial, his trial counsel believed the discussions between her and Pierce were "productive" and she had addressed all of Pierce's concerns. Any disagreement over defense strategies did not create a conflict of interest or a breach in the attorney-client relationship that resulted in ineffective assistance. *Williams v. State*, 273 Ga. App. 213, 218 (3) (c) (614 SE2d 834) (2005).

(b) Pierce contends his trial counsel failed to alert the trial court about a potential discovery violation because the State may have possessed three letters the victim wrote to Pierce. The victim testified she may have written three letters to Pierce, and his trial counsel cross-examined her about two of the letters. Pierce's trial counsel testified at the new trial hearing that Pierce initially refused to give her either originals or copies of any of these letters, that she eventually persuaded him to give her some of the letters, and that Pierce claimed he could not give her the rest of the letters because sheriff's deputies seized them during a search of his cell. The State denied possessing any letters that trial counsel did not have. Lacking evidence the State withheld any discovery material, trial counsel was not ineffective for failing to raise a meritless complaint. *Garrett v. State*, 285 Ga. App. 282, 287 (5) (c) (645 SE2d 718) (2007).

(c) Pierce contends trial counsel was ineffective for not advising him to take the State's offer to dismiss the aggravated assault charge and recommend a sentence of ten years to serve four in confinement if he pled guilty to aggravated battery and several misdemeanor crimes. His trial counsel testified that she told Pierce about that offer, but "it was not an offer he was interested in accepting." Additionally, defense counsel did not have all the discovery related to the aggravated battery charge then, and thus she took a neutral position on advising Pierce whether to take the offer. Although Pierce later expressed regret that the offer was not still available to him, he knew when he declined it that it was a time-limited offer. Pierce argues his lawyer should have obtained the victim's medical records before recommending whether he should have accepted the plea offer, but the records were not in the State's file and thus were not available to his trial counsel. The victim would not talk to Pierce's trial counsel, who could not subpoena her medical records, and the State was not required to provide them to her sooner than it did, ten days before trial. Accordingly, even though trial counsel admitted that maybe in retrospect Pierce should have accepted the plea when it was offered, she did not urge him to do so because she had not seen evidence that the State could carry its burden on the aggravated battery charge. She communicated the plea offer, and Pierce did not accept it; thus her assistance in that regard was not ineffective.

(d) Pierce contends his trial counsel was ineffective for failing to call an expert witness to testify about the severity of the victim's

YALE LAW LIBRARY

thigh injury. "As a general rule, matters of reasonable tactics and strategies, whether wise or unwise, do not amount to ineffective assistance of counsel." (Punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). The decision on which defense witnesses to call is a matter of trial strategy and tactics and does not usually constitute ineffective assistance of counsel. *Austin v. Carter*, 248 Ga. 775, 779 (2) (c) (285 SE2d 542) (1982). How to deal with an expert witness presented by the opposing side, including whether to present counter-expert testimony, to rely upon cross-examination, to forego cross-examination, or to develop certain expert opinion is a matter of trial strategy which, if reasonable, cannot be the basis of a successful ineffective assistance of counsel claim. *Eason v. State*, 283 Ga. 116, 118-119 (4) (657 SE2d 203) (2008); *Smith v. State*, 283 Ga. 237, 238-239 (2) (a) (657 SE2d 523) (2008); *Wallace v. State*, 272 Ga. 501, 505 (3) (b) (530 SE2d 721) (2000).

Trial counsel explained at the motion for new trial hearing that after receiving the victim's medical records she did not ask for a continuance to obtain an expert to review them because she was concerned it would give the State enough time to secure its witnesses for similar transaction evidence against Pierce. Also, trial counsel advised Pierce that a continuance would keep him in jail longer before the trial would begin. Finally, it was not clear that an expert would be beneficial to Pierce. Trial counsel discussed these factors with Pierce and he agreed that a continuance was not in his best interest. This was a tactical decision made by trial counsel with Pierce's consent and does not amount to ineffective assistance.

Pierce has not established that trial counsel's actions were deficient, and therefore his claims for ineffective assistance of counsel fail under the first prong of the *Strickland* test. *Taylor v. State*, 298 Ga. App. 145, 146-147 (2) (679 SE2d 371) (2009). Accordingly, the trial court did not err by denying Pierce's claims of ineffective assistance of counsel.

3. Pierce contends the trial court erred by denying his motion to quash the indictment. He contends the indictment should have been quashed because the State's practice was to give the grand jurors a general presentation on domestic violence during their orientation, which he argues was extremely prejudicial because of the allegations against him. The State responded that Pierce made no showing that the grand jury was tainted by an outside influence that prejudiced it. Because the transcript of the hearing on Pierce's motion to quash is not in the record, we must presume the evidence supports the trial court's decision. If

> the transcript or record does not fully disclose what transpired at trial, the burden is on the complaining party to

have the record completed in the trial court under the provisions of OCGA § 5-6-41 (f). . . . When this is not done, there is nothing for the appellate court to review.

*Baker v. State*, 247 Ga. App. 25 (2) (543 SE2d 70) (2000).

4. Pierce claims the trial court should have granted his motion to strike juror number 40 for cause because her daughter had recently experienced domestic violence and the juror was a registered nurse. Whether to strike a juror for cause lies within the sound discretion of the trial court, and the trial court's decision will not be disturbed absent an abuse of discretion. *Rocha v. State*, 248 Ga. App. 53 (1) (545 SE2d 173) (2001). To strike a juror for cause, "it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. Id.

The transcript shows the juror was concerned that her personal experiences with domestic violence and her medical background might affect her decision. The juror had a daughter who had been involved in a violent relationship within the past year and she was concerned about the medical testimony that might be presented during trial. The State and the juror had the following exchange:

State: Do you believe that you could put your situations aside and could view the testimony . . . ?
Juror No. 40: No, I would like, I would like to think that I can be impartial.

Trial counsel questioned the juror about her daughter's domestic dispute by asking, "Would it be fair to say that there's at least some lingering concern about her safety that you carry with you?" The juror replied, "Not at this time. At the time, at the time, yes, very much so." The trial court held that the juror's response indicated she would be able to set aside her personal feelings and be fair to both parties. As the juror did not exhibit bias that showed she was incapable of rendering an impartial verdict, the trial court did not abuse its discretion in denying Pierce's motion to strike her for cause. See *Rocha v. State*, supra, 248 Ga. App. at 54.

5. Pierce claims the trial court erred by refusing to charge that simple assault was a lesser included offense of aggravated assault. The indictment charged Pierce with committing aggravated assault by holding a knife to the victim's throat, threatening her with the knife, and placing the victim in "reasonable apprehension of receiving a violent injury." The victim testified that "off and on throughout the whole thing" Pierce held her on the ground "20 or 30 times"

YALE LAW LIBRARY

with a knife to her throat threatening to kill her, and she was afraid she was about to die. Although Pierce contends the victim was uncertain about the knife, the evidence shows her uncertainty was about how she was cut with the knife. As the only evidence is that Pierce held a knife to the victim's throat while threatening to kill her and that she was afraid he would kill her, and no evidence was presented that the knife was not used in that manner, no charge on the lesser included offense of simple assault was authorized.

> The complete rule with regard to giving a defendant's requested charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense *and there is no evidence raising the lesser offense*, there is no error in failing to give a charge on the lesser offense. Where a case contains some evidence, no matter how slight, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense.

(Citation and punctuation omitted.) *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994). Thus, the trial court did not err in denying Pierce's request to charge on simple assault as a lesser included offense of aggravated assault.

6. Pierce alleges that the jury charge on terroristic threats was improper because it did not match the indictment. The trial court charged the jury as follows:

> A person commits the offense of terroristic threats when that person threatens to commit any crime of violence with the purpose of terrorizing another. No person shall be convicted of terroristic threats on the unsupported testimony of the party to whom the threat is made. Whether there is sufficient support is a matter solely for you, the jury, to decide.

The indictment charges Pierce with terroristic threats for threatening "to commit a crime of violence, to wit: Murder, with the purpose of terrorizing another in reckless disregard of the risk of causing such terror. . . ." Pierce contends the jury charge defining a terroristic threat as threatening to commit "any crime of violence" instead of threatening to commit the crime specifically charged in the indictment was confusing, because the jury could think that even a "threat of a kick" would be sufficient to convict him of making terroristic threats. Pierce contends the trial court should have charged the jury that a person commits terroristic threats when he threatens to commit murder because that is what he was charged

with in the indictment. The statute defines terroristic threat as one in which a person "threatens to commit any crime of violence." OCGA § 16-11-37 (a).

> Jury instructions must be read and considered as a whole. And if the instructions sufficiently limited the jury's consideration to the elements of the offense as charged in the indictment such that no reasonable possibility exists that the jury could have convicted the defendant of committing the crime in a manner not alleged in the indictment, no reversible error occurred.

*Hammonds v. State*, 263 Ga. App. 5, 7 (2) (587 SE2d 161) (2003). The trial court read the indictment to the jury and gave them a copy to take to the jury room, and advised the jury that the indictment and the plea formed the issue they were to decide. Considering the charge as a whole, the jury was not misled or confused about the charge of terroristic threats in the indictment. Therefore, no reversible error has occurred.

7. Pierce's last enumeration is that his family violence battery conviction in Count 6 should have merged with his family violence aggravated battery conviction in Count 1. His sentence for Count 1 was 20 years confinement with 12 years to serve and the remainder on probation, and his sentence for Count 6 was 12 months probation consecutive to the sentence in Count 5, which was a sentence of 12 months probation consecutive to the sentence in Count 1.

> In determining whether offenses merge, Georgia applies the "required evidence" test. Under that analysis, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. Thus, a crime does not merge into another unless it is established by proof of the same or less than all the facts required to support the other offense.

(Citation and punctuation omitted.) *Smashum v. State*, 293 Ga. App. 41, 42-43 (2) (666 SE2d 549) (2008). Pierce was charged in Count 1 with aggravated battery (family violence) by maliciously causing bodily harm to the victim, a person with whom he formerly lived, by "seriously disfiguring a member of her body by repeatedly beating the thighs of said victim, resulting in scar tissue and discoloration." He was charged in Count 6 with family violence battery by intentionally causing substantial physical and visible bodily harm to the

victim, a person with whom he formerly lived, by beating her with a belt.

Pierce contends that he cannot be punished twice for the same offense.

> The prohibition against double jeopardy has two separate aspects. The first, embodied by OCGA § 16-1-8, amounts to a prohibition against successive *prosecutions* for the same offense. This has been referred to as the procedural bar against double jeopardy. The second, embodied by OCGA § 16-1-7, amounts to a prohibition against successive *punishments* for the same offense. This has been referred to as the substantive bar against double jeopardy.

(Citation omitted; emphasis in original.) *McClure v. State*, 179 Ga. App. 245, 246 (1) (345 SE2d 922) (1986).

The crime charged in Count 1 is aggravated battery with the punishment enhanced because Pierce and the victim formerly lived together:

> (a) A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof.
>
> . . .
>
> (h) If the offense of aggravated battery is committed between past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, or other persons excluding siblings living or formerly living in the same household, the defendant shall be punished by imprisonment for not less than three nor more than 20 years.

OCGA § 16-5-24 (a) and (h). The crime charged in Count 6 is battery with the punishment enhanced because Pierce and the victim formerly lived together:

> (a) A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another.
>
> (b) As used in this Code section, the term "visible bodily harm" means bodily harm capable of being perceived by a person other than the victim and may include, but is not

limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts. . . .

(f) If the offense of battery is committed between past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, or other persons living or formerly living in the same household, then such offense shall constitute the offense of family violence battery and shall be punished as follows: (1) Upon a first conviction of family violence battery, the defendant shall be guilty of and punished for a misdemeanor; and (2) Upon a second or subsequent conviction of family violence battery against the same or another victim, the defendant shall be guilty of a felony and shall be punished by imprisonment for not less than one nor more than five years. In no event shall this subsection be applicable to reasonable corporal punishment administered by parent to child.

OCGA § 16-5-23.1 (a), (b), and (f).

Thus, to convict Pierce of family violence aggravated battery, the State had to prove that he maliciously caused bodily harm to the victim, with whom he once lived, by seriously disfiguring her thighs resulting in scar tissue and discoloration. On the other hand, to convict Pierce of family violence battery as alleged in Count 6, the State had to prove that he intentionally caused substantial physical harm and visible bodily harm, i.e.,

bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts, to the victim, with whom he once lived, by beating her with a belt.

Although the State contends the counts are based on different facts and constitute two separate crimes, nothing in the indictment shows that the charges are based upon Pierce's actions at different times or places, or that the victim's injuries charged in Count 1 were different from those in Count 6. Thus, each battery "was not a separate and complete criminal act but rather was part of a continuous criminal act, committed at the same time and place and inspired by the same criminal intent." *Ingram v. State*, 279 Ga. 132, 133 (2) (610 SE2d 21) (2005). Therefore, the conviction of and sentence for Count 6 must be vacated.

*Judgment affirmed in part and vacated in part. Miller, C. J., and Andrews, P. J., concur.*

Decided November 19, 2009 —

*Lavender, Baker & Slider, Donald J. Slider*, for appellant.
*Kenneth W. Mauldin, District Attorney, Jon R. Forwood, Assistant District Attorney*, for appellee.