### A11A0241. CLEMENT v. THE STATE.
(710 SE2d 590)

BARNES, Presiding Judge.

A jury convicted Dax Corbin Clement of terroristic threats, criminal damage to property in the second degree, criminal trespass, simple battery, and family violence battery. Clement appeals from the denial of his motion for a new trial, contending that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of terroristic threats. Clement also contends that the trial court unlawfully sentenced him by failing to merge his conviction for simple battery into his conviction for family violence battery. For the reasons discussed below, we affirm the judgment of conviction for terroristic threats but agree with Clement that his simple battery and family violence battery convictions should have merged. Accordingly, we vacate Clement's judgment of conviction and sentence for simple battery and remand his case to the trial court for resentencing.

1. In reviewing the denial of a motion for a directed verdict of acquittal, we apply the same standard of review applicable to a challenge to the sufficiency of the evidence. *Jackson v. State*, 236 Ga. App. 260 (511 SE2d 615) (1999). "Under that standard[,] we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation omitted.) Id. It is the role of the jury, not this court, to resolve conflicts in the testimony and assess witness credibility. Id. at 261.

Viewed in the light most favorable to the verdict, the evidence showed that the female victim was involved in a "stormy relationship" with Clement and had lived with him "off and on" for many years. At the time of the incident in question, the victim and Clement had recently become parents. The victim, along with the infant child, were staying at her cousin's home. Clement was living at a separate residence, although he would sometimes spend the night at the cousin's home as well.

On the day of the incident, the victim and Clement had a heated argument over the telephone regarding whether the victim should move into her own apartment without him. Clement drove over to the cousin's home and confronted the victim in the front yard. The cousin, who was in the back yard, suddenly heard the victim screaming for help. The cousin ran to the front yard, where she saw Clement chasing the victim while holding what appeared to be a knife. As he chased the victim, Clement was screaming, "[Y]ou and that child are going with me. You're going to get in the car and go with me." The victim yelled, "[P]lease don't hurt me," and shouted for her cousin not to let Clement get the infant child from inside the home.

During the chase across the front yard, the victim was able to grab a shovel to defend herself from Clement and struck him on the shoulder, causing him to stumble. Clement grabbed the shovel and struggled with the victim for control. As they struggled over the shovel, Clement head-butted the victim several times in the face. He also struck the victim in the face with the shovel.

After the victim fell to the ground from the blows to her face, Clement threw down the shovel and went up the front steps of the cousin's home. He demanded that the cousin, who was standing by the front door, let him inside so that he could get the infant child. The cousin refused to open the door and asked Clement several times to leave her property. Clement would not leave and repeatedly attempted to force open the door. As they struggled over the door, the cousin called 911 on her cell phone.

Clement was unsuccessful in forcing open the front door. He

returned down the front steps, picked up the shovel, and approached the victim's car that was parked in the front yard. Clement smashed in the windows of the car and then ran into the nearby woods.

A responding officer apprehended Clement when he emerged from the woods. The officer observed the injuries to the victim's face and the smashed windows of her car. Emergency response personnel who arrived at the scene confirmed that the victim had facial swelling and was bleeding from the nose. They noted that the victim's nose appeared broken. The victim told them that her injuries were caused by Clement head-butting her in the face. However, she refused to go to the hospital for further treatment or to allow pictures to be taken of her injuries.

Clement was indicted and tried before a jury on two counts of terroristic threats against the cousin and the victim, respectively, and on one count each of aggravated assault, criminal damage to property in the second degree, criminal trespass, simple battery, and family violence battery. The victim's cousin, responding police officer, and emergency response personnel testified to the events as discussed above. The victim took the stand and denied that she had been threatened by Clement, that he had chased her with a knife, that he had intentionally hit her with the shovel, or that he had smashed in the windows of her car.

After the State rested, the trial court granted Clement's motion for a directed verdict of acquittal on the charge of making terroristic threats against the cousin, given that the only testimony concerning that threat came from the cousin herself. See OCGA § 16-11-37 (a) ("No person shall be convicted [of terroristic threats] on the uncorroborated testimony of the party to whom the threat is communicated."). The trial court, however, denied Clement's motion for a directed verdict of acquittal on the charge of making terroristic threats against the victim in light of the cousin's testimony concerning what had transpired.

The jury subsequently convicted Clement of making terroristic threats against the victim and of criminal damage to property in the second degree, criminal trespass, simple battery, and family violence battery, but acquitted him of aggravated assault. Clement's sentence for simple battery was enhanced based upon a special finding by the jury that Clement and the victim "were living or formerly living in the same household." Clement filed his motion for a new trial, which the trial court denied, resulting in this appeal.

Clement maintains that there was insufficient evidence to sustain his conviction for making terroristic threats against the victim. He contends that there was no evidence that he communicated a "threat" to the victim or that he acted with the intent to terrorize. We are unpersuaded.

"A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence[ ] . . . with the purpose of terrorizing another[.]" OCGA § 16-11-37 (a). See *Lanthrip v. State*, 235 Ga. 10, 11 (218 SE2d 771) (1975). "The crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize." *Armour v. State*, 265 Ga. App. 569, 571 (1) (594 SE2d 765) (2004). Thus, the State must establish two elements to sustain a conviction for making terroristic threats: (a) that the defendant threatened to commit a crime of violence against the victim, and (b) that the defendant did so with the purpose of terrorizing the victim. *Martin v. State*, 303 Ga. App. 117, 119 (1) (692 SE2d 741) (2010). Both elements were established in this case.

(a) There was sufficient evidence that Clement made a threat to commit a crime of violence against the victim. While OCGA § 16-11-37 (a) does not define "threat," words in a statute "should be construed in a manner that gives the words their plain and ordinary meaning unless it would lead to absurd results." *Barnett v. Fullard*, 306 Ga. App. 148, 151 (2) (701 SE2d 608) (2010). See also *Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009). Under its plain and ordinary meaning, the word "threat" refers to a communication, declaration, or expression of an intention to inflict harm or damage.[1] Significantly, however, the specific "form of a terroristic threat is not important. It need not take any particular form or be expressed in any particular words, and may be made by innuendo or suggestion." 31A Am. Jur. 2d Extortion, Blackmail, and Threats § 58. See, e.g., *Hammock v. State*, 210 Ga. App. 513, 515 (3) (436 SE2d 571) (1993) (defendant's anonymous mailing of an envelope containing a spent shotgun shell to the victim, given that defendant frequently quarreled with the victim over money and had previously shot the victim, constituted a terroristic threat). A communication is sufficient to constitute a threat "if a reasonable person could conclude that it was a threat under the circumstances." 86 C. J. S. Threats § 24. See *Cook v. State*, 198 Ga. App. 886, 887 (2) (403 SE2d 872) (1991) (concluding

---

[1] "[D]ictionaries may supply the plain and ordinary meaning of a word." (Citation and punctuation omitted.) *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 107 (1) (661 SE2d 578) (2008). Black's Law Dictionary defines "threat" as: "A communicated intent to inflict harm or loss on another or on another's property, esp. one that might diminish a person's freedom to act voluntarily or with lawful consent." Black's Law Dictionary (9th ed. 2009). In turn, "communication" is defined by Black's Law Dictionary as: "The expression or exchange of information by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception." Id. Other dictionaries define "threat" as "a declaration of the intention to inflict harm, pain, or misery," Collins English Dictionary (10th ed. 2009), or as "an expression of intention to inflict evil, injury, or damage," Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/threat.

that although words "I'm gonna get you" may not have expressly threatened victim's life as alleged in the indictment, the surrounding circumstances, including fact that defendant had previously threatened victim with death and had assaulted her with a pistol, were sufficient to allow jury to convict defendant of making a terroristic threat).

As previously noted, the cousin testified that while Clement was chasing the victim across the front yard with what appeared to be a knife, he was screaming at her, "[Y]ou and that child are going with me. You're going to get in the car and go with me."[2] It is true that the words spoken by Clement were not an express threat to commit an act of violence. Nevertheless, when taken in light of the factual surroundings in which they were spoken, a reasonable person could conclude that the words said by Clement conveyed a threat of committing a crime of violence against the victim if she failed to comply with his demand to get in the car and go with him. See, e.g., *Williams v. State*, 277 Ga. App. 884, 884-886 (1) (627 SE2d 897) (2006) (terroristic threat conviction affirmed, where defendant brandished knives while moving in direction of police officer); *In the Interest of C. S. G.*, 241 Ga. App. 37, 38 (1) (525 SE2d 106) (1999) (noting that "displaying a handgun to another under threatening circumstances may constitute . . . a terroristic threat"). As such, the State presented sufficient evidence to establish the first element of a terroristic threat.

(b) There also was sufficient evidence that Clement made the threat for the purpose of terrorizing the victim. "Direct evidence that the threats were made for the purpose of terrorizing another is not necessary if the circumstances surrounding the threats are sufficient for a trier of fact to find the threats were made for such a purpose." (Citations, punctuation and footnotes omitted.) *Hobby v. State*, 298 Ga. App. 52, 54 (1) (679 SE2d 72) (2009). Here, the threat was made during the course of a violent physical attack by Clement upon the victim, and, consequently, we have no trouble concluding that the evidence adequately established that he made the threat for the purpose of terrorizing her.

For these combined reasons, the State met its burden of proving the two elements necessary for sustaining a terroristic threats

---

[2] Because the cousin was not the party to whom the threat was communicated, corroboration of the cousin's testimony was not required to sustain the conviction. See *Warnock v. State*, 195 Ga. App. 537, 540 (4) (394 SE2d 382) (1990). We also note that although Clement was acquitted of aggravated assault, "Georgia does not recognize the inconsistent verdict rule." *Taylor v. State*, 305 Ga. App. 748, 751 (1), n. 4 (700 SE2d 841) (2010). Hence, Clement "may not use his acquittal on one count to challenge the factual findings of guilt on a separate count." (Citations and punctuation omitted.) Id.

conviction. A rational trier of fact was entitled to find Clement guilty beyond a reasonable doubt of making terroristic threats to the victim. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Clement argues that the trial court unlawfully sentenced him by failing to merge his conviction for simple battery (OCGA § 16-5-23 (a) (2)), the punishment for which was enhanced because he and the victim had lived together in the same household (OCGA § 16-5-23 (f)), into his conviction for family violence battery (OCGA § 16-5-23.1 (a), (f)). The two battery convictions merged if "each battery was not a separate and complete criminal act but rather was part of a continuous criminal act, committed at the same time and place and inspired by the same criminal intent." (Citation and punctuation omitted.) *Pierce v. State*, 301 Ga. App. 167, 177 (7) (687 SE2d 185) (2009) (family violence battery conviction should have been merged with family violence aggravated battery conviction). The State concedes that Clement's conviction for simple battery should have been merged into his conviction for family violence battery, and we agree. See id. Therefore, we vacate Clement's judgment of conviction and sentence for simple battery and remand the case to the trial court for resentencing. See *Carter v. State*, 285 Ga. 394, 399 (8) (677 SE2d 71) (2009).

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Adams and Blackwell, JJ., concur.*

DECIDED APRIL 20, 2011.

*James C. Wyatt*, for appellant.
*Leigh E. Patterson, District Attorney, Stephen J. Cox, C. Stephen Cox, Assistant District Attorneys*, for appellee.