**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 30, 2014**

# In the Court of Appeals of Georgia

A14A1271. JONES v. STATE.

BARNES, Presiding Judge.

A jury convicted Robert Lynn Jones of aggravated battery – family violence, criminal trespass, fleeing and attempting to elude police officers, reckless driving, failure to stop at a stop sign, failure to maintain a single lane, operating an unregistered vehicle, and having taillights that did not work properly. Jones filed a motion for a new trial, which the trial court denied. On appeal, Jones challenges the sufficiency of the evidence, and he contends that the trial court erred by declining his request for a continuance and by admitting testimony by the victim that allegedly placed his character in issue. Jones further contends that his trial counsel was ineffective for failing to object when the victim testified about a prior incident when he attempted to commit suicide. For the reasons discussed below, we affirm.[1]

---

[1] Because Jones was tried in 2010, the new Georgia Evidence Code does not apply to any of the evidentiary issues discussed in this case. See Ga. Laws 2011, Act

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807 (732 SE2d 845) (2012). So viewed, the evidence showed that Jones was married to the victim and lived with her and her two children in Athens-Clarke County. On the afternoon of Labor Day, September 4, 2006, Jones and the victim's daughter were in the family's pool while the victim and her son performed yard work. Jones and the victim had been drinking beer that afternoon, but the victim was not intoxicated.

While performing yard work, the victim noticed how Jones was interacting with her daughter in the pool and became uncomfortable. She accused Jones of flirting with her daughter, and he got out of the pool. When the victim repeated her accusation, Jones punched her in the face with his fist, knocking her to the ground. Once the victim got up from the ground, Jones told her to get her kids and come into the house, but she responded, "[Y]ou want to go in the house, I'll go in the house with you but you're not taking my kids with you." Jones and the victim then went inside the house.

52, § 101 ("This Act shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date.")

The victim could not remember what occurred after she entered the house with Jones. The victim's next memory was waking up on the kitchen floor to the sound of her daughter crying and screaming "Mama" and "Look what you've done to her." Starting to regain consciousness, the victim recalled Jones looking at her face and becoming upset. Jones began to scream that their relationship was over and went into the bedroom, where he gathered his clothes and belongings as if he were about to leave. While in the bedroom, Jones picked up a screwdriver and repeatedly stabbed a television hanging on the wall.

Continuing to scream that he was going to leave, Jones went into the kitchen and took a salt shaker from the kitchen table and threw it at another television in the living room that had been purchased with the victim's money, causing the screen to crack. Jones then retrieved a kitchen knife and threatened to commit suicide, telling the victim, "I'm just going to end it all. I'm sorry. I'll never be able to hurt you again." But the victim was able to take the knife away from Jones, and at that point he fled from the house in his vehicle, a pickup truck with an attached trailer.

Police officers responded to the scene after the victim dialed 911. The officers entered the house and noted that there was blood splatter in the kitchen and master bedroom, that the two televisions had been damaged, and that there was a fist-sized

3

hole in the door of the master bedroom. They spoke with the victim, who was shaking and crying, and she told them that Jones had punched her in both eyes and described his vehicle to them. The officers observed that the victim's eyes were bruised and swollen shut, and one of the officers described the swelling as so extensive that each eye was "the size of a tennis ball." A next-door neighbor also came over to the house when she saw the flashing lights outside and noted that the victim had blood on her hands, bruises and scratches on her neck, and eyes so swollen that were "bulbous," looked like a "bug[']s sticking out," and caused her to look like a "prize fighter."

The police officers spoke with the next-door neighbor outside the victim's house. As they spoke, the neighbor interrupted their conversation and told them that she saw Jones in his truck with the attached trailer in front of the house. Jones quickly drove away, and the officers followed him in their marked patrol cars with their blue lights and sirens activated. Jones did not stop and instead accelerated. As the police pursued him, Jones drove out of Athens-Clarke County, through Madison and Jackson Counties, and then back into Athens-Clarke County. During the police chase, which lasted approximately 15 minutes, Jones failed to stop at several stop signs, did not maintain his lane of travel, and drove at speeds reaching up to 85 mph in a 55 mph zone. Additionally, the trailer attached to Jones' truck did not have operating

4

taillights and did not have a properly registered license plate. Jones ultimately swerved off the road and into the woods, where he wrecked into a tree. He fled into the woods and escaped police apprehension at that time.

While the police chase was taking place, the victim was transported by ambulance to the hospital for treatment. The lead detective assigned to the case spoke with the victim at the hospital, and she explained to him what had occurred in an audio-recorded interview. The detective noted that the victim's eyes were swollen shut, and he took multiple photographs of the injuries she had sustained when he met with her over the course of the next several days.

A physician in the emergency department noted that the victim was unable to see because of the extensive swelling around her eyes, had marks on her jaw, neck, and ear lobe, had a cut on the center of her ear, and had three cuts in the area of her eyes. The physician examined the victim's eyeballs but did not see any damage other than the extensive swelling and bruising, and he ordered a CT scan of the victim's face, which revealed no fractures. The victim was released from the hospital later that night but had to have someone else drive her home. As a result of the severe bruising and swelling, the victim was unable to see clearly for approximately 10 days after the attack.

5

Two days after the attack and police chase, the police apprehended Jones. Jones was advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966) and agreed to speak with the lead detective, who audio-recorded the interview. Jones told the detective that he had slapped and pushed the victim, but he denied striking her with his fist. Jones also admitted that he had been driving the truck that had crashed during the police chase.

Jones subsequently was indicted and tried for multiple offenses relating to his attack of the victim and the police chase.[2] The victim, the next-door neighbor, the responding police officers, the emergency medical technicians, the lead detective, and the emergency room physician testified to the events as set out above. The State also introduced into evidence the audio recordings of the detective's interviews with the victim and Jones, as well as photographs of the victim's injuries.

Additionally, the victim testified about prior difficulties between her and Jones. She testified that they had numerous heated arguments over the course of their relationship, and on several occasions Jones had been physically abusive towards her. On two occasions, Jones choked the victim, one time to the point of causing her to

---

[2] Jones' first trial ended in a mistrial. On appeal, Jones has not raised any issues relating to the mistrial.

6

lose consciousness. On another occasion, Jones struck the victim in the face, causing a black eye, and on a different occasion he pushed the victim to the ground and kicked her repeatedly in the stomach. According to the victim, Jones also had previously attempted to commit suicide during one of their heated arguments by cutting himself with a knife.

Jones elected not to testify at trial. He called one of the emergency room nurses as a defense witness in an effort to show that the victim exhibited signs of intoxication when she arrived at the hospital after the attack. However, the victim's next-door neighbor, the emergency room physician, and the lead detective had testified for the State that the victim did not appear intoxicated that day.

After hearing all of the evidence, the jury found Jones guilty of aggravated battery – family violence for seriously disfiguring the victim's face and eyes, criminal trespass,[3] fleeing and attempting to elude the responding officers, reckless driving, failure to stop at a stop sign, failure to maintain a single lane, operating an

---

[3] Criminal trespass was a lesser included offense of the indicted charge of criminal damage to property in the second degree – family violence, which was based on the damage caused to the television in the living room.

unregistered vehicle, and having taillights that did not work properly.[4] Jones filed a motion for new trial, asserting, among other things, that his trial counsel rendered ineffective assistance. The trial court conducted a hearing on the motion, but Jones did not present any witnesses at the hearing, including his trial counsel. The trial court thereafter denied Jones' motion for a new trial, and this appeal followed.

1. Contrary to Jones' argument on appeal, the evidence introduced at trial and summarized above authorized a rational jury to find him guilty beyond a reasonable doubt of the offenses for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). While Jones attacks the credibility of the next-door neighbor, "[q]uestions concerning the weight of the evidence and credibility of the witnesses were for the jury to decide." *Johnson v. State*, 289 Ga. App. 206, 208 (656 SE2d 861) (2008). In any event, the testimony of the victim was sufficient to sustain Jones' conviction for aggravated battery – family violence and criminal trespass, and the testimony of the responding officers was sufficient to support his

---

[4] The State requested and obtained entry of a nolle prosequi on a separate count in the indictment for kidnapping with bodily injury – family violence. Additionally, the jury found Jones not guilty of a separate count of aggravated battery – family violence, and the trial court directed a verdict of acquittal on a separate count for false imprisonment – family violence.

convictions related to his vehicle and the police chase. See former OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.").[5]

(a) Although somewhat unclear, Jones also appears to challenge his conviction for aggravated battery – family violence on the ground that the injuries to the victim's face and eyes did not "seriously disfigure" her, an essential element of that offense.[6]

> "A person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another . . . by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). Although OCGA § 16-5-24 does not define the term "serious disfiguring," this Court has ruled that the crime of aggravated battery does not require that the victim's disfigurement be permanent; however, the injury must be more severe than a mere visible or superficial wound. Notwithstanding this threshold for determining whether the disfiguring injuries meet the requisite level of seriousness to constitute an aggravated battery, we have further acknowledged that the circumstances of each aggravated

---

[5] The provisions of former OCGA § 24-4-8 are codified in OCGA § 24-14-8 under the new Georgia Evidence Code.

[6] Given that it is undisputed that Jones and the victim were married at the time of the attack, Jones does not challenge the "family violence" element of his conviction. See OCGA § 16-5-24 (h) ("If the offense of aggravated battery is committed between past or present spouses, persons who are parents of the same child, parents and children, stepparents and stepchildren, foster parents and foster children, or other persons excluding siblings living or formerly living in the same household, the defendant shall be punished by imprisonment for not less than three nor more than 20 years.").

battery vary; thus, whether a disfigurement is serious is almost always a question for the jury to resolve on a case-by-case basis.

(Citations omitted.) *Feagin v. State*, 317 Ga. App. 543, 545 (1) (731 SE2d 778) (2012). See *Pierce v. State*, 301 Ga. App. 167, 168 (1) (a) (687 SE2d 185) (2009); *Williams v. State*, 248 Ga. App. 316, 318-319 (1) (546 SE2d 74) (2001).

Here, there was testimony reflecting that as a result of being attacked by Jones, the victim had marks on her jaw, neck, and ear lobe, had a cut on the center of her ear, and had three cuts in the area of her eyes. Furthermore, as a result of the attack, the victim temporarily lost consciousness, and both of the her eyes were bruised and swollen shut to such a severe extent that she was unable to see clearly for approximately 10 days. One of the responding officers described the swelling as so extensive that each of the victim's eyes was "the size of a tennis ball," and the next-door neighbor described her eyes as so swollen that they were "bulbous," looked like a "bug[']s sticking out," and caused her to look like a "prize fighter." The trial evidence also included numerous photographs showing the injuries to the victim's face and eyes.

Based on this evidence, particularly the fact that the victim temporarily lost consciousness and could not see clearly for several days, the jury could reasonably

10

find that the combined injuries to the victim's face and eyes were more than mere superficial wounds. While the victim did not sustain any facial fractures or physical damage to her eyeballs, the evidence was sufficient for the jury to determine that the victim's disfigurement was serious and to sustain Jones' conviction for aggravated battery – family violence. See *Penland v. State*, 229 Ga. 256, 257 (1) (190 SE2d 900) (1972) (affirming aggravated battery conviction where the victim's head was bloody, her body sustained cuts and bruises, her eyes were swollen shut, and she was incoherent when first discovered after the attack); *Pierce*, 301 Ga. App. at 168 (1) (a) (jury could find serious disfigurement based on the severity of the victim's bruising, which "created knots deep under her skin" and "put the victim at risk for blood clots and deep vein thrombosis").

(b) Jones further argues that the State failed to prove that venue was properly laid in Athens-Clarke County where he was tried.

> [V]enue is a jurisdictional fact and an essential element that the State must prove beyond a reasonable doubt for every crime. The State may use both direct and circumstantial evidence to prove venue. In general, defendants should be tried in the county where the crime occurred. OCGA § 17-2-2 (a).

(Citations omitted.) *Lanham v. State*, 291 Ga. 625, 626 (2) (732 SE2d 72) (2012).

11

In the present case, one of the responding officers of the Athens-Clarke County Police Department directly testified that 1154 Hull Road, the house where Jones and the victim lived, was located in Athens-Clarke County. The officer's testimony was sufficient to establish that venue for the offenses that Jones committed at the house, including the aggravated battery – family violence, occurred in that county. See *Henry v. State*, 278 Ga. 554, 555 (2) (604 SE2d 469) (2004) (direct testimony of police officers regarding location where the crime occurred was sufficient to establish venue).

With respect to the offenses relating to or arising out of the police chase, it is true that the responding officers testified that Jones drove away from his house that was located in Athens-Clarke County after the police spotted him, drove through Madison and Jackson Counties, and then drove back into Athens-Clarke County before crashing into a tree.

> But when a crime is committed in transit or in more than one county, Georgia law provides special methods for establishing venue. For example, a crime committed on or immediately adjacent to a boundary line between two counties is considered committed in either county. Moreover, in any case it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it

12

might have been committed. . . . Furthermore, . . . venue for a crime involving a vehicle may lie in any county through which the vehicle traveled.

(Punctuation and footnotes omitted.) *Short v. State*, 276 Ga. App. 340, 342-343 (1) (a) (623 SE2d 195) (2005). See OCGA § 17-2-2 (b), (e), (h). Accordingly, because there was testimony that Jones' vehicle traveled in Athens-Clarke County during the course of the police chase, there was sufficient evidence for the jury to find that venue was proper in that county. See id. Jones, therefore, cannot show that the State failed to meet its evidentiary burden of proving venue.

2. Jones also contends that the trial court erred in denying his motion for a continuance. "Denial of a motion for continuance is within the sound discretion of the trial court, and this Court will not interfere unless there was a clear abuse of discretion." *Simmons v. State*, 291 Ga. 705, 706 (2) (733 SE2d 280) (2012). We discern no abuse of discretion by the trial court in this case.

Jones was represented by counsel at trial, but he was permitted to personally address the trial court immediately before trial and move for a continuance. According to Jones, additional time was needed because he did not have sufficient time to meet with his defense counsel and he desired to subpoena certain medical and

mental health records. Defense counsel then addressed the trial court and stated that, while she understood Jones' concerns, she believed that she was prepared for trial. Defense counsel noted that she had spoken with Jones several times in person and on the telephone about the case, and had reviewed the full transcript from the first trial that had ultimately ended in a mistrial. Defense counsel also stated that the records sought by Jones were not necessary because she and Jones had both agreed that they did not wish to challenge his statement to law enforcement, if offered into evidence by the State, and the records would have only been relevant to that issue. After hearing from Jones and his counsel, the trial court denied the motion for a continuance.

As an initial matter, the trial court was authorized to deny Jones' pro se motion for a continuance "because [Jones] did not have the right to assert this motion on his own, without the consent of his attorney." *Beattie v. State*, 240 Ga. App. 327 (1) (523 SE2d 389) (1999). As we have repeatedly explained, "[a] criminal defendant does not have the right to represent himself and also be represented by an attorney." Id.

In any event, the facts of the present case were neither complex nor convoluted, Jones did not offer any intricate defenses, and the evidence for all of the charges consisted of eyewitness accounts rather than forensic or other scientific evidence.

14

Moreover, defense counsel herself stated that she was prepared for trial, particularly after reviewing the full transcript of the prior trial involving the same witnesses that had ultimately ended in a mistrial. In light of these circumstances, we cannot say that the trial court abused its discretion in denying the requested continuance. See *Miller v. State*, 303 Ga. App. 422, 423-424 (693 SE2d 637) (2010).

"Additionally, when there is no showing that a continuance would have benefitted the defendant, he has not established harm in the denial of the continuance." (Footnote omitted.) *Roberts v. State*, 322 Ga. App. 659, 661 (1) (745 SE2d 850) (2013). At the hearing conducted on his motion for a new trial, Jones did not submit the medical and mental records that he had claimed he needed time to subpoena before trial or otherwise present any evidence showing what benefit a continuance would have been to him. Hence, Jones has failed to demonstrate that he was harmed by the denial of his motion for a continuance. See *Roberts*, 322 Ga. App. at 661 (1); *Miller*, 303 Ga. App. at 424; *Heaton v. State*, 175 Ga. App. 735 (2) (334 SE2d 334) (1985). It follows that the trial court committed no error in denying Jones' motion for a continuance.

3. Jones next argues that the trial court erred in allowing, over objection, the following question and answer during the prosecutor's redirect examination of the victim:

Q. . . . [W]ithout telling me anything from before, was your concern for your daughter that day and why you felt uncomfortable based on something other than what happened just that day?

A. Yes ma'am. According to Jones, the question and answer improperly placed his character in issue because it implied that he "had an inappropriate sexual relationship with the victim's daughter," and that it was for that reason that the victim felt uncomfortable with his interaction with her daughter in the swimming pool on the day of the attack.

We are unpersuaded. The question on redirect examination was relevant and material because it was in response to a line of questions on cross-examination during which defense counsel explored why the victim had felt uncomfortable when she saw Jones interacting with her daughter in the pool. "The conduct and extent of redirect examination of a witness in order to neutralize the effect of cross-examination is left to the trial court's sound discretion." *Pittman v. State*, 172 Ga. App. 22, 23 (2) (a) (322 SE2d 71) (1984). See *Wells v. State*, 243 Ga. App. 629, 630 (2) (534 SE2d 106) (2000) (trial court did not abuse its discretion in allowing questioning on redirect

16

examination that "sought to explain or counter the adverse credibility inferences elicited by . . . cross-examination").

Moreover, the victim never elaborated on the basis for her concern about Jones' interaction with her daughter, and thus Jones' character was, at most, incidentally placed in issue by the question and answer. As we have noted, "[m]aterial evidence is not rendered inadmissible merely because it incidentally places a defendant's character in issue." *Johnson v. State*, 263 Ga. App. 443, 446 (2) (587 SE2d 775) (2003). Consequently, the trial court did not err in admitting the question and answer on redirect examination.

4. Lastly, Jones contends that the trial court erred in denying his motion for a new trial based on the ineffective assistance of counsel. According to Jones, his trial counsel was ineffective for failing to object when the victim testified that Jones had attempted to commit suicide during one of their prior heated quarrels.

To prevail on his claim of ineffective assistance of counsel under the two-prong test enunciated in *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984), Jones "must show both that his counsel performed in a professionally deficient manner and that there is a reasonable probability that, but for such deficiency, the result of his trial would have been different." *Smith v. State*, 292

17

Ga. 620, 621 (2) (740 SE2d 158) (2013). If Jones fails to prove either prong of the *Strickland* test, we need not address the other prong. *Russell v. State*, 322 Ga. App. 553, 556 (3) (b) (745 SE2d 774) (2013).

Jones cannot show that his trial counsel was deficient for failing to object to the victim's testimony regarding his previous suicide attempt. "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation and footnote omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008). And where, as in the present case, trial counsel does not testify at the hearing on the motion for new trial, "it is extremely difficult to overcome the presumption that counsel's conduct resulted from reasonable trial strategy." (Citation and punctuation omitted.) *Brown v. State*, 288 Ga. 902, 908 (5) (708 SE2d 294) (2011).

That presumption clearly has not been overcome in this case. Evidence of prior difficulties between a victim and defendant, "whether an assault, quarrel, or a threat," is generally admissible in domestic violence cases even though it may incidentally bear on the defendant's character. *Appling v. State*, 246 Ga. App. 556 (541 SE2d 129) (2000). Moreover, evidence, such as a defendant's suicide threat, that is "part of the

18

res gestae of the . . . incidents of prior difficulties between the parties" is admissible. *Billington v. State*, 313 Ga. App. 674, 679 (2) (b) (722 SE2d 395) (2012) (discussing the admissibility of prior difficulty evidence in domestic violence cases, including a suicide threat, in the context of an ineffective assistance claim). Here, the victim's testimony about Jones' prior suicide attempt was part of the res gestae of the prior difficulties evidence and thus was relevant and admissible, even if it incidentally placed Jones' character in issue. See id. Accordingly, any objection to the victim's testimony would have been futile, and the "[f]ailure to make a meritless objection cannot be evidence of ineffective assistance." (Citations and punctuation omitted.) *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005). The trial court therefore committed no error in denying Jones' motion for a new trial on the asserted ground.

*Judgment affirmed. Boggs and Branch, JJ., concur*.