## A01A1477. BELL v. THE STATE.
### (555 SE2d 747)

SMITH, Presiding Judge.

Frederick Eugene Bell was charged with violation of the Georgia Controlled Substances Act in eight particulars: four counts of sale of cocaine; one count of possession of cocaine; two counts of trafficking in cocaine; and possession of cocaine with intent to distribute. Stephanie Denise Wallace was charged along with Bell with respect to one of the trafficking charges, Count 7. Immediately before trial com-

menced, Wallace entered a guilty plea to a lesser offense. She was sentenced to first offender probation and a $1,700 fine. Bell was tried before a jury and convicted on all counts. With regard to Count 7, which is the only charge and sentence of which he complains, he was sentenced to life imprisonment and a $300,000 fine. His motion for new trial as amended was denied, and he appeals. He raises arguments concerning his alleged attempt to enter a guilty plea before trial began, the disparity between the sentence he received after trial and the sentence imposed on Wallace, and the sufficiency of the evidence with respect to Count 7. We find no error, and we affirm.

1. Combining two enumerations into one discussion, Bell argues that the trial court improperly injected itself into plea negotiations by calling jurors into the courtroom after Bell stated that he wanted to plead guilty and that this action rendered defense counsel "constructively ineffective."

(a) In support of his contention that the trial court erroneously interfered with plea negotiations, he cites to a portion of the transcript showing the events that occurred immediately prior to trial. The court did, as pointed out by Bell, ask him whether he wanted a jury trial, and the court stated, "Do you plead not guilty, you want a jury trial on this case." Bell responded, "No. I ain't pleading not guilty." The court then asked, "How are you pleading then?" Bell replied, "I don't want no jury trial." Referring to his testimony during the hearing on the motion for new trial, he claims that the prosecutor then made an offer of a "split sentence of 30 serve 20 years to a seven count indictment." He maintains that he was given no explanation as to how this recommendation applied to each of the seven counts. Bell argues that "[a]bsent an explanation of the consequences of his plea to this new recommendation," neither he nor his trial counsel immediately responded, and "[t]he Court then cut off any opportunity for [him] to consult with his attorney about the new offer by calling for jurors." He maintains that "time was not of the essence" because the trial had been delayed for over an hour while Wallace entered her guilty plea.

Bell has taken the colloquy between the trial court and himself out of context and has misstated and mischaracterized the events that occurred before the jury was chosen. We first note that after Wallace entered her guilty plea, Bell's counsel stated that he became involved in the case approximately one year before trial began and that the case had been pending for fourteen months prior to that time. He filed discovery and a bond motion, and approximately nine months before trial, he participated in a pre-trial conference with the former prosecutor involved in the case. During that conference, the prosecutor made a plea offer to Wallace in which she would receive

probation, essentially the same offer she again received and accepted just prior to trial, and offered Bell a sentence of twenty years, with ten to serve, in exchange for a guilty plea. The prosecutor also offered at that time to drop Count 7.

Defense counsel presented the offer to Bell who, according to counsel, stated that he had not "done anything on the case" and rejected the offer. The offer was withdrawn immediately. After Wallace's entry of a guilty plea and her agreement to testify against Bell, however, defense counsel indicated that Bell would accept the previously made offer. A brief discussion between the court and counsel for the State showed that the offer remained withdrawn. The court asked whether further negotiations were required, and the prosecutor responded negatively. The court then asked Bell if he was ready to go forward, and Bell responded, "Yeah."

A short time later, after the trial court discussed procedural issues with the attorneys, but before the jury was brought into the courtroom, a question arose as to whether Bell wished to plead guilty. The trial court asked Bell if he wanted a jury trial. As discussed above, Bell expressly refused to plead not guilty and stated that he did not want a jury trial. Apparently, a plea offer had been made, because the trial court asked, "What do you mean you don't want a jury trial? Do you want to accept the State's recommendation on the plea, is that what you're saying?" Bell did not respond, and the prosecutor stated that the recommendation was for a sentence of 30 years with 15 to serve and stated the basis for this offer.

The trial court again asked Bell whether he wanted to accept the State's offer or be tried by a jury, stating that "[n]ow is the time" to make the decision. Importantly, the trial court offered defense counsel the opportunity to "take [Bell] back and talk with him a little bit" about the offer. Defense counsel asked Bell if he wanted to "talk about it one more time" and noted that they had already "been talking . . . for really a couple of hours." Bell did not respond to the inquiries of either the trial court or defense counsel. The court once more asked Bell if he wanted the record to reflect a plea of not guilty being entered, and defense counsel specifically instructed Bell that he must "respond to the Judge whether you want to accept the plea or you want to go forward with a plea of not guilty and start the jury trial. We need to do one or the other." Again, Bell refused to respond. The trial court ordered that the record reflect entry of a not guilty plea and had the jury pool brought into the courtroom. The trial commenced, with Bell ultimately being convicted on all counts.

A trial court is not authorized to participate in plea negotiations except to the extent of indicating whether the court is or is not likely to agree with the proposed disposition. *State v. Dawson*, 203 Ga. App. 854, 855 (1) (419 SE2d 30) (1992). But the trial court here did not

participate in the negotiations. It simply repeatedly attempted to learn from Bell, to no avail, whether he accepted the State's offer. Bell steadfastly refused to respond to the court's and his own counsel's inquiries. Contrary to Bell's argument that he was not given an opportunity to consult with his attorney before accepting or rejecting the "new" offer, the trial transcript shows clearly that the court stated that Bell and his attorney had an opportunity to discuss the offer in private, and defense counsel reiterated to Bell that they could talk about the plea at some greater length. And given defense counsel's statement at trial that they had already been talking for a "couple of hours," the record lends support to our conclusion that the newest plea offer was not suddenly made in court, but had been discussed at some length. The trial court did not interfere impermissibly with plea negotiations or otherwise inject itself improperly into the proceedings, and a new trial is not warranted on this ground.

(b) It follows that because the trial court did not erroneously interfere with the plea negotiations, Bell's claim that defense counsel was rendered "constructively ineffective" is meritless. As discussed above, defense counsel offered to talk with Bell in private about the plea offer, and he instructed Bell that he needed to respond to the trial court's inquiries. We also note that defense counsel attempted to have the earlier plea offer, made several months prior to trial, reinstated, or at least to initiate further discussion about that offer. And defense counsel testified that Bell "was very adamant" he was not interested in taking a plea. Under the circumstances of this case, we cannot say that counsel's performance was deficient or that it fell outside the broad range of reasonable professional conduct expected of members of the bar. See *LeGallienne v. State*, 180 Ga. App. 108, 109 (348 SE2d 471) (1986).

2. Bell argues that a gross disparity in sentencing as to Count 7 exists, because he received life imprisonment while Wallace received first offender probation for the same criminal act. On this basis, he contends he was denied equal protection. We do not agree. It is true that "[w]hen considering an equal protection challenge in criminal matters, individuals are 'similarly situated' only if they are charged with the same crime or crimes." (Citation and footnote omitted.) *Woodard v. State*, 269 Ga. 317, 321-322 (3) (496 SE2d 896) (1998). But here, although Wallace and Bell were initially charged with the same crime, Wallace pled guilty to a *lesser* charge and was sentenced to probation as a first offender and received a $1,700 fine. Bell, however, in addition to being convicted of *seven* other drug charges, was convicted of a charge that he sold, delivered, and possessed 200 grams or more of cocaine. Prior convictions of robbery and possession of cocaine with intent to distribute were also introduced in aggravation of sentence. A life sentence was therefore authorized. See OCGA

§§ 16-13-30 (d); 17-10-7 (a); *Howard v. State*, 234 Ga. App. 260, 261 (2) (506 SE2d 648) (1998) (full concurrence as to Division 2).[1] Furthermore, Wallace's guilty plea could be regarded as an acknowledgment of guilt and a willingness to assume responsibility for her conduct. See *Lee v. State*, 199 Ga. App. 246 (2) (404 SE2d 598) (1991). Although Bell may have expressed that he did not want a jury trial following the entry of Wallace's plea, his continuing recalcitrance and stubborn silence in the face of repeated attempts by the trial court to determine whether he wished to accept the plea offer demonstrated a lack of willingness to cooperate with the trial court and to accept responsibility for his own actions. On these facts, we cannot conclude that Bell was denied equal protection.

3. Bell argues that the evidence was insufficient to convict him of Count 7, which charged him with possessing, delivering, and selling 200 grams or more of a mixture of cocaine. The record shows that after completing several transactions with Bell in which she purchased smaller quantities of cocaine, undercover agent Erica Crabb arranged to meet with Bell at a particular parking lot in order to purchase approximately nine ounces of powder cocaine. Bell arrived at the designated location. He was a passenger in a car driven by Wallace. After Crabb arrived, she walked to the car in which Bell was sitting and leaned inside the open window. He reached onto the floorboard at his feet and pulled out two bags of suspected powder cocaine. She told him she needed to go to her car to get the $7,000 they had agreed on as a purchase price. She walked toward her car and gave a signal for an arrest to be made. After Bell was arrested, the suspected cocaine was seized. It weighed 244 grams and tested positive for "cocaine with a concentration of seventy percent" according to the forensic chemist who testified at trial.

Bell argues that the State failed to show possession, delivery, and sale of cocaine as alleged in the indictment. But even though the indictment was formed in the conjunctive, proof that Bell committed the crime by any of the methods charged would form a basis for upholding his conviction. See, e.g., *Mahone v. State*, 247 Ga. App. 596, 598 (544 SE2d 514) (2001); *Stone v. State*, 229 Ga. App. 367, 370 (1) (b) (494 SE2d 48) (1997). Unlike the facts of *Whipple v. State*, 207 Ga. App. 131, 132 (427 SE2d 101) (1993), relied on by Bell, in which the defendant's conviction was reversed because the evidence showed only his mere presence near a quantity of drugs, the evidence presented by the State established that Bell actually showed Crabb the cocaine he intended to sell her. The cocaine weighed more than 200

---

[1] Although Bell was sentenced as a first offender for the armed robbery conviction, this conviction was admissible for sentencing purposes. *Williams v. State*, 228 Ga. App. 622, 623 (3) (492 SE2d 290) (1997).

grams as required by OCGA § 16-13-31 (a) (1) (B). The evidence was sufficient to convict Bell of the offense charged against him. See *Moran v. State*, 170 Ga. App. 837, 841 (2) (318 SE2d 716) (1984).

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED OCTOBER 17, 2001.

*Richard D. Wilson*, for appellant.

*Patrick H. Head, District Attorney, Amy H. McChesney, Assistant District Attorney*, for appellee.