### A11A1552. SCHNEIDER v. THE STATE.
(718 SE2d 833)

MCFADDEN, Judge.

After a jury trial, John Schneider was convicted of terroristic threats, false imprisonment and felony theft by taking. He appeals, challenging the sufficiency of the evidence and a jury charge regarding the offense of terroristic threats. Because the jury charge did not amount to reversible error and there is enough evidence to support the guilty verdicts as to false imprisonment and terroristic threats, we affirm those convictions. We also find sufficient evidence to support the guilty verdict as to theft by taking; however, since there was insufficient evidence showing that the value of the stolen property exceeded $500, we vacate Schneider's felony theft sentence and remand for resentencing as a misdemeanor.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence." (Citations and punctuation omitted.) *Hyde v. State*, 291 Ga. App. 662 (662 SE2d 764) (2008). So viewed, the evidence shows that approximately a year after having been released from prison for drug and other offenses, the 41-year-old Schneider met the victim, a 65-year-old widow, in Sunbury, Georgia. The two began a romantic relationship, and several weeks later, Schneider, who had been living on a salvaged sailboat that he had bought for $300, moved into the victim's house.

Shortly after moving in with the victim, Schneider began physically and verbally abusing her. On several occasions, he burned her furniture — including tables, chairs and fans that he had ripped out

---

of the ceiling — in the yard. During one of these furniture-burning episodes, Schneider forced the victim to sit in a chair for hours, cursed at her, refused to let her use the bathroom, and poured soda and beer on top of her head when she asked for water. When she later got up from the chair and approached him on the deck of the house, he held his hand so tightly across her face that it caused bruising around her nose.

On another occasion, Schneider damaged the victim's car. He wrote a curse word, as well as the words "whore" and "bitch," on the hood of the vehicle, broke the mirror and broke the driver's door so that it would not open. When the victim's son later came to the house, Schneider refused to let him in, threatening to slice his throat if he entered the house.

The abuse culminated on February 22, 2007, when Schneider cursed and yelled at the victim and repeatedly spit in her face, as she lay naked on her bed. He refused the victim's repeated requests to get off the bed, forced her to sign a bill of sale purportedly showing that she had sold a boat to him for $5,000, and made her write him a check for $12,000.

Schneider ordered the victim to go into the bathroom, fill the bathtub with water and get in it. The victim complied, fearing that Schneider would kill her if she resisted. Once she was in the bathtub, Schneider turned on a hair dryer and threatened that he was going to cause the victim to have a heart attack by putting the dryer in the tub with her. She begged him not to do so, but Schneider plunged the hair dryer into the water. The victim feared that she would die, but realized that Schneider had unplugged the hair dryer before he put it in the water. With the victim still in the bathtub, Schneider defecated in the toilet and then, using a spoon that he had gotten from the kitchen, forced the victim to eat his feces. He rubbed feces in her hair and on her shoulders and back, and then told her to take a shower.

Eventually, Schneider fell asleep, and the victim escaped from the house. She went to the home of neighbors, who took her to the sheriff's department to report the incident. After Schneider awoke, he left the house and met his nephew, who told him that the police were looking for him. Schneider returned to the victim's house, took some of her jewelry and then pawned it at a pawn shop for $275. Schneider fled the area on a boat that the victim had purchased, and several days later he was caught by the Coast Guard in Florida.

1. Schneider claims that his terroristic threats conviction, for having threatened to cause the victim to have a heart attack by throwing the hair dryer into the bathtub with her, must be reversed because there is no evidence corroborating the victim's testimony about the threat. The claim is without merit.

> A person commits the offense of a terroristic threat when he or she threatens to commit any crime of violence with the purpose of terrorizing another. The crime of making terroristic threats focuses solely on the conduct of the accused and is completed when the threat is communicated to the victim with the intent to terrorize.

(Citations and punctuation omitted.) *Clement v. State*, 309 Ga. App. 376, 379 (1) (710 SE2d 590) (2011). But no person shall be convicted of the offense of terroristic threats based on the uncorroborated testimony of the person to whom the threat was communicated. OCGA § 16-11-37 (a). Nevertheless,

> [i]t is well established that the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged. Slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the jury. If there is any evidence of corroboration, this court will not go behind the jury verdict and pass on its probative value.

(Citations and punctuation omitted.) *Wilson v. State*, 291 Ga. App. 263, 264 (1) (661 SE2d 634) (2008).

In this case, the victim was the only witness to testify about Schneider's threat to throw the hair dryer into the bathtub with her. But corroborating circumstances may include a defendant's aggressive and hostile conduct leading up to a threat, *Hobby v. State*, 298 Ga. App. 52, 54 (1) (679 SE2d 72) (2009), and in this case there was ample evidence of Schneider's hostile and abusive treatment of the victim leading up to the incident in the bathroom. Moreover, Schneider himself admitted during his trial testimony that he was in the bathroom while the victim was in the bathtub. And after the incident, police investigators found the hair dryer in the bathroom, as well as a towel smeared with feces.

Given these circumstances, the victim's testimony regarding the incident "was sufficiently corroborated by the evidence concerning the events which transpired immediately before and after [Schneider] made the asserted threat[ ]." (Citation and punctuation omitted.) *Scott v. State*, 225 Ga. App. 729, 732 (3) (484 SE2d 780) (1997). See also *Wilson*, supra (discovery of gun used to make threat constituted corroborating evidence); *Sampson v. State*, 209 Ga. App. 213, 215 (1) (433 SE2d 136) (1993) (evidence of defendant's presence at the scene of threat and aggressive reaction to victim on another occasion were corroborating circumstances). Accordingly, there was

sufficient evidence from which the jury was authorized to find Schneider guilty beyond a reasonable doubt of the offense of terroristic threats.

2. Schneider argues that the trial court erred in instructing the jury on the statutory definition of terroristic threats — that a person commits the offense when he "threatens to commit any crime of violence with the purpose of terrorizing another or in reckless disregard of the risk of causing such terror" — when the indictment specifically charged him with "threaten[ing] to commit a crime of violence, to wit: to give [the victim] a heart attack by throwing a hair dryer into the water-filled bathtub which she occupied." As an initial matter, we note that Schneider did not raise any objections to the jury charge at trial. Since the trial in this case took place in 2008, after the effective date of OCGA § 17-8-58, Schneider was required to inform the trial court of any specific objections to the charge before the jury retired to deliberate, and the failure to make any such specific objections precludes appellate review unless the jury instruction constitutes plain error affecting substantial rights of the parties. OCGA § 17-8-58 (a), (b); *Loadholt v. State*, 286 Ga. 402, 405 (3), n. 3 (687 SE2d 824) (2010). Because Schneider's challenge raises a possible due process violation, we are authorized to review the jury charge for plain error. See *Martin v. State*, 303 Ga. App. 117, 120 (3), n. 1 (692 SE2d 741) (2010).

> A criminal defendant's right to due process may be endangered when . . . an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment. The giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment.

(Citations omitted.) *Harwell v. State*, 270 Ga. 765, 766 (1) (512 SE2d 892) (1999).

In this case, pretermitting whether the statutory definition of terroristic threats provides different methods of committing the crime or whether there is evidence that Schneider made such a threat in an unalleged manner, we find no due process violation. See *Machado v. State*, 300 Ga. App. 459, 462 (5) (685 SE2d 428) (2009). A "reversal is not mandated where, as here, the charge as a whole limits the jury's consideration to the specific manner of committing

the crime alleged in the indictment." (Citation and punctuation omitted.) *Martin*, supra at 121 (3). The trial court instructed the jurors that the indictment, which had been read to them, formed the issue that they had been sworn to try, and that the state had the burden of proving beyond a reasonable doubt "every material allegation of the indictment and every essential element of the crime charged." The trial court also sent the indictment out with the jury during deliberations, instructing them that "[t]he body of the indictment that you will need to read sets forth in each count specifically what the State contends is the crime in this case."

These limiting instructions cured any complained of problem with the terroristic threats charge. See *Machado*, supra at 462-463 (5). Compare *Milner v. State*, 297 Ga. App. 859, 860-861 (1) (678 SE2d 563) (2009) (court failed to give a limiting instruction ensuring that the jury would find defendant guilty of terroristic threats in specific manner charged in indictment). Thus, considering the jury charge as a whole, we conclude that "there is no reasonable probability that the jury convicted [Schneider] of [terroristic threats] in a manner not alleged in the indictment. [Cit.]" *Johnson v. State*, 309 Ga. App. 655, 657 (3) (710 SE2d 857) (2011) (physical precedent only). See also *Martin*, supra.

3. Schneider contends that his false imprisonment conviction must be overturned because there is insufficient evidence that the victim was held against her will. We disagree.

False imprisonment occurs when a person, "in violation of the personal liberty of another, . . . arrests, confines, or detains such person without legal authority." OCGA § 16-5-41 (a). Detention for a brief amount of time is sufficient, and "[i]t is for the jury to decide if the detention amounted to false imprisonment. [Cit.]" *Pierce v. State*, 301 Ga. App. 167, 169 (1) (c) (687 SE2d 185) (2009). Here, the evidence, as recounted above, shows that Schneider forced the nude victim to stay on her bed while he spit on and cursed at her. He then ordered her to get off the bed and into the bathtub, where he threatened her and smeared feces on her. According to the victim, she was afraid that Schneider would kill her if she did not comply with his orders. Contrary to Schneider's claims, the victim's testimony "is enough evidence for the jury to determine the victim was detained against her will." Id.

4. Schneider argues that his felony conviction for theft by taking the victim's jewelry must be overturned because he had an ownership interest in the jewelry and because the state failed to prove that the value of the jewelry exceeded $500. With regard to Schneider's purported ownership interest in the jewelry, there is evidence contradicting his claim, including the undisputed fact that the victim purchased the jewelry in question and her testimony that she did not

give Schneider permission to take the jewelry to the pawn shop. Of course, any conflicts in the testimony of witnesses are matters of credibility for the jury to resolve. *Bearfield v. State*, 305 Ga. App. 37, 38 (699 SE2d 363) (2010). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact." (Citation and punctuation omitted.) Id. Because there is testimony to support the jury's finding that the victim owned the jewelry and did not give permission for it to be taken from her home and pawned, the jury's verdict that Schneider is guilty of theft by taking shall be upheld. See OCGA § 16-8-2 (person commits the offense of theft by taking when he unlawfully takes property of another with the intention of depriving her of the property).

As for the value of the stolen jewelry, "[v]alue is not an element of theft by taking as proscribed by OCGA § 16-8-2. The value of stolen property is relevant only for purposes of distinguishing between a misdemeanor and a felony. OCGA § 16-8-12 (a)." (Citation and punctuation omitted.) *DuCom v. State*, 288 Ga. App. 555, 561 (3) (654 SE2d 670) (2007). "Felony theft by taking occurs when value of the stolen property exceeds $500. [Cits.]" *Gorham v. State*, 287 Ga. App. 404, 405 (1) (651 SE2d 520) (2007), disapproved in part on other grounds, *McCart v. State*, 289 Ga. App. 830 (658 SE2d 465) (2008).

In this case, we agree with Schneider that the state failed to establish that the value of the stolen jewelry exceeded $500. The only evidence of value cited by the state is testimony that the items in question are rings that were part of an entire lot of jewelry — including necklaces, bracelets, rings and pendants — that the victim had previously purchased from the pawn shop for $10,000. But the state never introduced any testimony that the value of the specific items taken by Schneider exceeded $500. Rather, the only evidence related to those items shows that Schneider pawned nine rings for $275. Because there is not sufficient evidence to establish that the value of the stolen property exceeded $500, we must vacate Schneider's felony sentence as to that count of the indictment, and remand the case with direction that a conviction and sentence be entered for a misdemeanor offense. See *DuCom*, supra at 562 (3); *English v. State*, 288 Ga. App. 436, 439 (1) (654 SE2d 150) (2007); *Gorham*, supra at 406 (1).

*Judgment affirmed in part and vacated in part, and case remanded with direction. Phipps, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 26, 2011 —
RECONSIDERATION DENIED NOVEMBER 14, 2011.

*Jimmonique R. S. Rodgers*, for appellant.

*Tom Durden*, District Attorney, *Melissa L. Poole*, *Russell B. Mabrey, Jr.*, Assistant District Attorneys, for appellee.