**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 12, 2016**

# In the Court of Appeals of Georgia

A15A1660. BOCCIA v. THE STATE.

RAY, Judge.

Daniel Boccia and Brandon Cesari were tried jointly before a jury for crimes resulting from an altercation that occurred behind a fraternity house on the campus of the Georgia Institute of Technology ("Georgia Tech"). Both men were indicted for armed robbery (OCGA § 16-8-41); two counts of aggravated assault with intent to rob (OCGA § 16-5-21 (a) (1)); carrying a weapon in a school safety zone (OCGA § 16-11-127.1); and battery (OCGA § 16-5-23.1).[1] The jury convicted Boccia, who at the time of the crimes was a 21-year-old student at Georgia Perimeter College, of armed

---

[1] OCGA § 16-11-127.1 has been amended multiple times since the offenses occurred. We consider the case in light of the appropriate prior version of that statute. The pertinent language in the prior and current versions of the statute is identical. See Ga. L. 2010, Act 465, §2; Act 643, § 1-4.

robbery, battery, and carrying a weapon in a school safety zone, but acquitted him on the two aggravated assault counts.[2] He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support his convictions for armed robbery and carrying a weapon in a school safety zone, that the trial court erred in how it instructed or failed to instruct the jury, and that the trial court erred in making comments that allegedly interfered with the plea negotiations. He also argues that his trial counsel was ineffective. For the reasons that follow, we affirm.[3]

The facts, as outlined in our earlier opinion in the related *Cesari* case, are as follows:

> Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B), 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the evidence shows that following a University of Georgia-Georgia Tech football game, Georgia Tech student Blake Bauer was in a friend's room at the Pi Kappa Phi fraternity house when he heard someone banging on the window. He went outdoors to investigate and saw two men who rushed at him and punched him in the face. He identified the men in court as Cesari and Boccia. He testified that Boccia punched him first,

---

[2] This Court rendered a separate decision in Cesari's appeal in *Cesari v. State*, __ Ga. App. __ (Case No. A15A1389, decided November 17, 2015).

[3] Boccia's motion to file a supplemental brief is denied.

2

then Cesari punched him. The men punched him "at least ten times in the face."

Bauer fell down onto a PVC pipe, which he picked up and tried to swing at the men, hitting Cesari. He swung the pipe only once before Cesari snatched it from him. As Boccia grabbed him by the collar and backed him toward some air conditioning units, he saw that Cesari was pointing a knife at him. Bauer testified that the knife had approximately a three-inch blade. Both men demanded Bauer's wallet and money. Bauer denied having any money. Cesari then hit Bauer in the back of the head with the pipe. Bauer felt a searing pain and fell to the ground. Boccia began patting Bauer's pockets, looking for a wallet, so Bauer took out his wallet and handed it to Boccia. The men opened the wallet, and upon finding that it contained no cash, threw it at Bauer and left the scene. Jurors saw surveillance video of the incident.

Another Georgia Tech student witnessed the incident from his window in a nearby fraternity house. At about 2:00 a.m., he saw two men breaking bottles, then saw them retrieve a knife from their car and walk toward the Pi Kappa Phi house, where they began throwing PVC pipes that were three to four feet in length. He testified that the street lights and fraternity house lights were on and that he could see the men's faces. He identified Boccia and Cesari, whom he had seen earlier at a party in his own fraternity house, as the men he saw throwing the pipes. However, he could not recall which man had the knife. He saw Bauer walk out of the Pi Kappa Phi fraternity house. Although Bauer did not approach Boccia and Cesari aggressively, both Boccia and Cesari began

3

punching Bauer, who fell to the ground. When the men backed Bauer into the corner by the air conditioning units, one of them hit Bauer in the head with a PVC pipe.

The witness called 911, and Georgia Tech police arrested Cesari and Boccia later that evening. Officers found a knife in Boccia's pocket. The knife was admitted into evidence at trial and shown to the jury.

Boccia testified at trial; Cesari did not. Boccia testified that he and Cesari, who were both intoxicated, were behind the Pi Kappa Phi fraternity house "throwing some stuff around" when he looked into one of the fraternity house's windows. He said Bauer came outside and confronted him with a PVC pipe, hitting him in the forehead. Cesari took the pipe from Bauer, and Cesari and Bauer began to fight. Boccia threatened Bauer and testified that he "remember [ed] having [Bauer's] wallet in my hands," though he denied asking Bauer for the wallet. More specifically, he testified at trial that Bauer "brandished his wallet out" saying "take my wallet," then threw it to the ground. He further testified that he was too drunk to recall why he picked up the wallet, but said he looked through it. When shown the knife, he testified that his grandfather had given it to him and that he had given it to Cesari at some point in the evening to open a beer bottle. He said Cesari threw the knife to the ground and that he picked it up, not knowing it may have been used in the altercation.

*Cesari*, supra at *1-*2.

Boccia appeals from the denial of his motion for new trial.

4

1. Boccia argues that the trial court erred in failing to give, sua sponte, several jury charges, as outlined below. He further argues that his trial counsel was ineffective in failing to seek these jury instructions.

Pursuant to OCGA § 17-8-58 (b), although no objection is made at the trial, appellate courts must conduct a plain error review when an appealing party properly asserts an error in jury instructions. *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011).

> First there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error – discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation and punctuation omitted.) Id. at 33 (2) (a).

As to Boccia's claims of ineffective assistance of counsel,

Under *Strickland v. Washington* [466 U. S. 668 (104 S.Ct. 2052, 80 LE2d 674) (1984)], to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong. When reviewing the trial court's decision, this Court will accept the trial court's factual findings and credibility determinations unless clearly erroneous; however, we review the court's application of legal principles de novo.

If a defendant bases his ineffectiveness claim on trial counsel's failure to request a charge on a certain defense, it is irrelevant whether the trial court would have been required to give such a charge absent a request. Rather, the appropriate inquiry is whether trial counsel provided deficient representation in failing to request the charge, and if so, whether the defendant can meet the prejudice prong of *Strickland v. Washington*. In making the latter determination, the relevant inquiry is whether the charge, if it had been requested, was warranted by the evidence, and if it had been given, whether there is a reasonable probability that it would have changed the outcome of the trial.

(Citation and footnotes omitted.) *Pierre v. State*, 330 Ga. App. 782, 784-785 (2) (769 SE2d 533) (2015).

(a) Boccia argues that if the jury could have found from the evidence that the robbery was committed without the use of the knife as an offensive weapon, as charged, he was entitled to a charge on robbery by intimidation (unarmed robbery) or theft by taking as lesser-included offenses. See OCGA § 16-1-6.

(i) *Lesser-included charges*. Pursuant to OCGA § 16-8-40 (a) (1), (2), "[a] person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another . . . [b]y use of force [or] . . . [b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another[.]" Under OCGA § 16-8-2, a person commits the crime of theft by taking "when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."

Bauer testified that Cesari had a knife, and a witness, Alexander Layyous, testified that he saw a knife but could not identify whether Boccia or Cesari was holding it. Bauer testified that Boccia demanded his wallet and patted his pockets in

7

an attempt to find it. *Cesari*, supra at *2. Bauer also testified that the men threatened him by "wav[ing] a knife in my face. The other one put his fists up into my face like – you know, like threatening to punch me more." Bauer testified that he was afraid.

Boccia, however, denied even knowing that a knife was involved in the incident. He acknowledged threatening Bauer but insisted that he never asked for Bauer's wallet. Boccia testified that Bauer offered him the wallet and threw it on the ground, saying, "Here, take my wallet." Boccia acknowledged picking up the wallet, but testified that he "didn't take anything" from it and had no intent to rob Bauer.

While it is true that "[w]here a case contains some evidence, no matter how slight, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense," *Styles v. State*, 329 Ga. App. 143, 150 (2) (764 SE2d 166) (2014) (punctuation and footnote omitted), our plain error analysis requires that we look to the *Kelly* standard, supra. "Satisfying all four prongs of this standard is difficult, as it should be." (Citation and punctuation omitted.) *Kelly*, supra at 33 (2) (a). Here, exercising our discretion and in light of the overwhelming evidence of Boccia's guilt, as outlined above, we cannot say that the failure to give the lesser-included instructions either created any reasonable likelihood that the State's burden of proving all essential elements of armed robbery was lessened, or that the charge

8

as given likely affected the outcome of the proceedings or seriously affected the fairness, integrity, or public reputation of the proceedings. *Carter v. State*, 269 Ga. 891, 893 (7) (506 SE2d 124) (1998); *Kelly*, supra. We find no error.

(ii) *Ineffective assistance of trial counsel*. Boccia argues that trial counsel was ineffective in failing to request a jury charge on the lesser included offenses of robbery by intimidation or theft by taking. We disagree.

At the motion for new trial hearing, trial counsel testified that he could not "imagine" a strategic reason for not seeking an instruction on the lesser included offenses, and that he did not remember why he did not seek such an instruction. It is clear, however, that trial counsel pursued an all-or-nothing strategy in defending Boccia on the armed robbery count. Boccia admitted to no wrongdoing and denied all aspects of participation in the armed robbery. He denied any intent to rob, denied demanding Bauer's wallet, and denied even knowing that a knife was used. He also denied ever harming or hitting Bauer.

Looking at the objective reasonableness of counsel's performance, we find that there were sound strategic reasons for not undermining Boccia's all-or-nothing defense by introducing the idea that he may have committed lesser crimes. *Villegas v. State*, 334 Ga. App. 108, 112 (2) (778 SE2d 363) (2015) (counsel's failure to seek

9

a charge on a lesser included offense and instead to pursue an all-or-nothing strategy "is not so patently unreasonable that no competent attorney would have made that decision") (citation and punctuation omitted). See also *Powell v. State*, 291 Ga. 743, 748 (2) (b), n. 2 (733 SE2d 294) (2012) ("That [defendant's] lawyer recalled no strategic thinking that might have motivated [his actions] is of no moment. Although the thinking of the lawyer may be relevant to our inquiry . . . our inquiry properly is focused on what the lawyer did or did not do, not what he thought or did not think") (citation and punctuation omitted). Counsel was not ineffective.

(b) Boccia argues that the trial court erred in failing to instruct the jury sua sponte on the law of self defense and also argues that his trial counsel was ineffective in failing to request such an instruction.

(i) *Self defense instruction*. Boccia asserts that the trial court erred when it failed to charge the jury on the affirmative defense of self defense.[4] It is true that "the trial court must charge the jury on the defendant's sole defense, even without a written request, if there is some evidence to support the charge." (Citation,

---

[4] Boccia cites to a portion of the record where he testifies that he was restraining Bauer from hitting him and checking to see if Bauer had a weapon, but does not reveal in his appellate brief which conviction or convictions he is challenging with this affirmative defense.

10

punctuation, and footnote omitted.) *Burden v. State*, 290 Ga. App. 734, 736-737 (3) (660 SE2d 481) (2008). However,

> With a legal affirmative defense, the accused admits the elements of the crime, but seeks to justify, excuse, or mitigate by showing no criminal intent; all elements of the parts of the crime are admitted with the exception of the intent. All defenses which have been held to be statutory affirmative defenses meet this criteria; i.e., justification, self-defense or defense of others. Each of these affirmative defenses *requires that the defendant admit the crime* before he can raise such defense.

(Citation and punctuation omitted; emphasis supplied.) *Hicks v. State*, 287 Ga. 260, 261-262 (2) (695 SE2d 195) (2010).

Boccia has not admitted to any crimes. He denied using any offensive weapon or facsimile thereof to take Bauer's wallet. He testified that he did not know a knife was used in the robbery, and has denied possessing a knife with a blade of two or more inches. He has never admitted to harming Bauer and repeatedly denied hitting him. As Boccia denied the elements of the crimes, a charge on self defense was not warranted and the trial court did not err. *LeMon v. State*, 290 Ga. App. 527, 530-531 (3) (660 SE2d 11) (2008).

11

(ii) *Ineffective assistance of trial counsel.* Boccia also argues that his trial counsel was ineffective in not seeking a jury instruction on self defense. As outlined in Division (1) (b) (i), self defense is an affirmative defense that requires the defendant to admit to all elements of the crimes with the exception of criminal intent. *Hicks*, supra at 261-262 (2). Boccia made no such admissions. Also, because the evidence did not support a self defense jury instruction, trial counsel's failure to make a futile charge request does not constitute ineffective assistance. *Pierre*, supra at 786 (2).

2. Boccia argues that the trial court erred in instructing the jury that the offense of armed robbery could be committed in a manner not alleged in the indictment. As trial counsel did not object to this instruction, Boccia contends that the trial court committed plain error. See OCGA § 17-8-58 (b), supra; *Kelly*, supra; and our plain error discussion in Division (1), supra. We disagree.

> A criminal defendant's right to due process may be endangered when an indictment charges the defendant with committing a crime in a specific manner and the trial court's jury instruction defines the crime as an act which may be committed in a manner other than the manner alleged in the indictment. The giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the

12

jury is not instructed to limit its consideration to the manner *specified* in the indictment.

(Citation omitted; emphasis supplied.) *Schneider v. State*, 312 Ga. App. 504, 507 (2) (718 SE2d 833) (2011).

The indictment alleged that Boccia committed the offense of armed robbery "by use of a knife; an offensive weapon[.]" The trial court charged the jury that a person commits armed robbery "by use of an offensive weapon[,]" and defined the term "offensive weapon" as "any object, device or instrument that when used offensively against a person is likely to or actually does result in death or serious bodily injury. The character of a weapon may be established by direct or circumstantial evidence." Boccia argues, and the State concedes, that the evidence presented could have allowed the jury to find him guilty of armed robbery committed by a method not charged in the indictment, including by use of a PVC pipe.[5] However, the State's concession does not end our inquiry.

---

[5] Boccia also argues, and the State agrees, that the charge would have permitted the jury to convict Boccia of armed robbery by use of his hands. We note that "hands and feet do not constitute offensive weapons for purposes of the armed robbery statute." *Wright v. State*, 228 Ga. App. 779, 780 (1) (492 SE2d 680) (1997).

Where the indictment charges a defendant committed an offense by one method, it is reversible error for the court to instruct the jury that the offense could be committed by other statutory methods *with no limiting instruction*. The defect is cured, however, . . . where[] the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt.

(Citations omitted; emphasis supplied.) *Mikell v. State*, 286 Ga. 722, 724 (2) (b) (690 SE2d 858) (2010). In the instant case, the trial court read the indictment to the jury and sent the indictment, a written copy of its charge, and the verdict form out with the jury when it began deliberations.

In *Mikell*, supra, the Supreme Court found no error where an indictment charged the defendant with burglary by *entering* the victim's hotel room without authority, while the jury charge provided that the crime could be committed by a person who "*enters or remains* in any building" without authority. (Emphasis supplied.) *Mikell*, supra at 724 (2) (b). *Mikell* does not directly quote the trial court's limiting instruction, but finds that, "[c]onsidered in its entirety, the charge in this case fairly instructed jurors that they could convict appellant of burglary only as charged in the indictment[.]" Id.

14

The trial court in the instant case instructed jurors not to begin deliberations until they received the indictment in the jury room, and told jurors to "look at the indictment to see how these charges are alleged." While the court told jurors to consider the testimony and evidence "together with the charge of this court," it immediately cured its own instruction by adding that jurors could convict the defendant only if " you should find and believe beyond a reasonable doubt that the defendant[] . . . commit[ed] the offense of armed robbery . . . *as alleged in the indictment*[.]" (Emphasis supplied.) The trial court's curative instruction was sufficient. *Faulks v. State*, 296 Ga. 38, 39 (2) (764 SE2d 846) (2014) (trial court instructed jury that the State must prove every element of the crimes as charged in the indictment); *Schneider*, supra at 508 (2) (trial court's limiting instruction that the indictment "sets forth in each count specifically what the State contends is the crime in this case" cured any alleged error).[6]

---

[6] *Milner v. State*, 297 Ga. App. 859 (678 SE2d 563) (2009) is distinguishable and does not require a different result. When the jury in *Milner* asked for a recharge on the crime at issue, terroristic threats, the trial court for the second time gave an improper charge. *Milner*, supra, at 860 (1). Further, the trial court did not give a limiting instruction to ensure that the jury would base any finding of guilt on the manner charged in the indictment. Id.

15

3. Boccia argues that his trial counsel was ineffective in failing to object when the trial court's jury instruction on armed robbery expanded the scope of the indictment. In light of our holding in Division 2, we disagree, as Boccia has failed to show ineffective assistance of counsel as a result of counsel's failure to object to the jury charge which, even if erroneous, was cured by the trial court's limiting instruction and, thus, did not affect the outcome of the proceedings. *Faulk*, supra at 39 (3).

4. Boccia argues that the trial court's comments "improperly encouraged [him] to proceed to trial" rather than "entertaining any plea discussions with the prosecution" because the trial court led him to believe that he would not receive a sentence of greater than 10 years.[7] We disagree.

"A trial court is not authorized to participate in plea negotiations except to the extent of indicating whether the court is or is not likely to agree with the proposed disposition." (Citation omitted.) *Bell v. State*, 252 Ga. App. 74, 76 (1) (a) (555 SE2d

---

[7] Boccia received a 15-year sentence for armed robbery, with 14 years in confinement and the remaining year on probation. This sentence runs concurrently with a 10-year sentence for possession of a weapon in a school safety zone and with a 1-year sentence for battery.

16

747) (2001). In one set of comments that Boccia complains of, the trial court told the State that it had a

> you've-got-to-be-kidding-me feeling about this case right now, that what I'm seeing right now by virtue of just your opening statements is y'all are pursuing armed robbery against these two defendants based on a PVC pipe that somebody picked up in a frat fight and a pocket knife that maybe has a 2-inch long blade on it. I have seen the State come off armed robbery charges for a lot more egregious conduct than this. *I'm not prejudging anything . . . I haven't heard your case. . . .* I don't pick the charges, but I do sentence. *You're going to have to get an armed robbery conviction to get a whole lot of time from what I'm seeing right now.*

(Emphasis supplied.)

The trial court, as Boccia acknowledges, "did not explicitly state, 'I will not sentence the defendant to more than ten years no matter what." Still, he argues that "when the [S]tate offered to allow [him] to plead guilty and receive a sentence of ten years, there was no reason to accept this offer, because a conviction following trial would have no worse consequence."

First, according to the trial court, the State's "best last offer" was not a 10-year sentence, but rather a "15 years['] sentence to serve 10 years in jail, balance probated[.]" Second, the record shows that the trial court's complained-of comments

17

occurred *after* Boccia had rejected this offer and after he told the court he wanted to go to trial despite understanding that he could be sentenced to a maximum of life plus 51 years if convicted on all counts. As Boccia points us to no other evidence of another actual plea offer, we can find no merit in his contention that he rejected an offer because of the trial court's after-the-fact comments.

However, Boccia also argues that the trial court interfered in the plea negotiation process. He complains of a second, later comment, made just before closing arguments. There, the trial court said, "[Y]ou know my feelings on the case. It really hasn't changed. You know, my comments initially were after hearing the State's opening that even if you proved everything you're going to prove I was a bit surprised at what was going forward." The trial court continued, however, saying, "I think what is in evidence under the law as to what elements there are for armed robbery, there's enough there for a jury to consider it, so I think as a court that's where I am, but as far as a plea, that's a whole different ballgame."

In that context, defense counsel told the trial court that there were "some brief discussions with respect to a potential plea" although he "[did not] see that as a possibility" and that "if the door is closed, the door remains close[d]." Defense counsel said he "initiated" the negotiations, while "the State didn't invite anything."

18

Counsel for the State merely said he was "waiting to hear" from the defense. The lawyers then had an off-the-record discussion. The trial court, in the context of the State's 15-years-to-serve-10 offer before the trial, had earlier indicated that it was "inclined to sentence according to that negotiated sentence if you did work that out[,]" which Boccia had said he understood. There is no record evidence of another plea offer by the State after the trial but before the closing. The evidence only indicates that Boccia made some sort of plea proposal on which the parties, obviously, could not agree.

While it is inappropriate for a trial court to insert itself into the plea negotiation process, Uniform Superior Court Rule 33.5 (B) expressly allows a trial court to indicate whether it is likely to agree in a proposed plea. Compare *Skomer v. State*, 183 Ga. App. 308, 309-310 (358 SE2d 886) (1987) (finding that while a court may communicate its willingness or lack thereof to accept an independently negotiated plea, the trial court may not participate by indicating that "rejection of a plea proposal will result in greater punishment in the event of a conviction by a jury") (emphasis omitted). The instant case does not come within *Skomer*'s purview because the trial court did not enter into plea negotiations and neither promised nor implied that it would only give Boccia a 10-year sentence, or that it would give him a higher

19

sentence if he did not plead.[8] The trial court also clearly stated that it was not prejudging the case. See *Baptiste v. State*, 229 Ga. App. 691, 699 (3) (494 SE2d 530) (1997). We find Boccia's contentions unavailing.

5. Boccia contends that the evidence was insufficient to support his conviction for armed robbery. We disagree.

As an initial matter, the jury was charged on parties to a crime. OCGA § 16-2-20 provides that

> (a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime. (b) A person is concerned in the commission of a crime only if he: (1) Directly commits the crime; (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity; (3) Intentionally aids or abets in the commission of the crime; or (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

---

[8] The trial court did not indicate that it would give a harsher sentence if the Defendant was convicted at trial, only that it would take a conviction for armed robbery for it to consider giving him "a whole lot of time." Of course, Boccia was convicted of armed robbery. Further, it is not lost on us that Boccia was not pressured or induced into entering a plea, as he demanded and received a trial on all issues.

As outlined more fully above, the victim, Bauer, testified that Cesari had a knife in his hand while Boccia was yelling, "Give me your f—ing wallet[,]" and that both Cesari and Boccia demanded his wallet. The victim testified that the men threatened him, then Cesari left briefly to pick up one of the PVC pipes, then returned and hit him in the back of the head. He fell to the ground, and Boccia "started patting me down looking for my wallet[.]" Fearing that he "could potentially be cut, stabbed, potentially murdered right here[,]" the victim gave Boccia his wallet.

Boccia argues that no testimony shows he "possessed" the knife during the course of the robbery or that he and Cesari planned the event. However, it was not necessary for the State to prove either of these contentions as the evidence authorized the jury to conclude that Boccia intentionally aided and abetted the commission of the crime and was more than merely present. In *Tesfaye v. State*, 275 Ga. 439, 439-440 (1) (569 SE2d 849) (2002), our Supreme Court recognized that the defendant did not need to possess the weapon to be convicted as a party to the crime of armed robbery and possession of a firearm during the commission of a crime, where the defendant's accomplice carried a firearm during the robbery. Further, although Boccia argues that pursuant to *Rosemond v. United States*, __ U. S. __ (II) (B) (134 SCt 1240, 1248-1250, 188 LE2d 248) (2014), that a defendant must know in advance that his

21

companion is armed because the defendant must intend to commit each element of the crime rather than a single component of it, our Supreme Court already has distinguished and declined to follow *Rosemond.* The Court noted that *Rosemond* was decided pursuant to the federal aiding and abetting statute that involves using or carrying a firearm in connection with a drug trafficking crime, and found that "federal law . . . does not control here." *Hicks v. State*, 295 Ga. 268, 273 (1), n. 3 (759 SE2d 509) (2014). See also *Williams v. State*, 276 Ga. 384, 386 (4) (578 SE2d 858) (2003) (prosecution not required to prove defendant knew that co-defendant intended to use a gun; the only proof required was that defendant was part of a conspiracy to rob and co-defendant's "use of weapon was naturally and necessarily done in furtherance of that crime"). The evidence was sufficient.

6. Boccia argues that the evidence was insufficient to show that he possessed a knife with a blade longer than two inches on school property. Pursuant to OCGA § 16-11-127.1, the statute that prohibits carrying or possessing weapons in a school safety zone, a weapon includes "any dirk, bowie knife, switchblade knife, ballistic knife, [or] any other knife having a blade of two or more inches[.]" OCGA § 16-11-127.1 (a) (2).

22

Boccia testified at trial that he possessed a knife at various times during the course of the evening, including that he possessed it at the scene of the crime. The crime occurred on the Georgia Tech campus. See OCGA § 16-11-127.1 (a) (1). At trial, a police officer displayed the knife to the jury, and Bauer testified that he saw the knife and that it had "probably a 3-inch blade." Under the standard of review mandated by *Jackson*, supra, the evidence was sufficient.[9] This enumeration is without merit.

*Judgment affirmed. Barnes, P. J., concurs. McMillian, J., concurs in judgment only as to Division 1(a)(i), and concurs fully, otherwise.*

---

[9] Again, we note that there was testimony that Cesari possessed the knife during the crime and that the jury was instructed as to the elements of party to the crime, O.C.G.A. § 16-2-20.